2002 WY 142

**DC PRODUCTION SERVICE,**
**Appellant (Petitioner),**

v.

**WYOMING DEPARTMENT OF EMPLOYMENT, Employment Tax Division; and the Wyoming Unemployment Insurance Commission, Appellee (Respondent).**

No. 01–23.

Supreme Court of Wyoming.

Sept. 24, 2002.

Before HILL, C.J., and GOLDEN, LEHMAN *, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶1] Following a hearing, the hearing examiner decided that, for purposes of paying unemployment insurance premiums under Wyoming's employment security law, DC Production Services, Inc., (DC) was the employer of sixteen flow testers who provided services to DC's oil company clients. The sole issue in this case is whether the Wyoming Unemployment Insurance Commission correctly determined that flow testers were employees rather than independent contractors. We affirm.

## ISSUES

[¶2] DC presents the following issue for our review:

> Were persons who provided services to the Appellant's customers independent contractors or employees?

The Commission presents the following issue:

> The Unemployment Insurance Commission (Commission) held that services provided by 16 flow testers to DC Production Service in 1999 are covered employment under the Wyoming Employment Security Law (Act), making payments to flow testers reportable and taxable under the Act. Was the decision of the Commission in accordance with law pursuant to Wyo. Stat. Ann. § 27–3–104(b) (Lexis 1999) and supported by substantial evidence as required by Wyo. Stat. Ann. § 16–3–114(c)(ii)(A) and (E) (Lexis 1999)?

## FACTS

[¶3] DC is an oil field service company that rents flow testing equipment to oil companies and contracts with oil companies to provide oil well flow testing services. The persons providing the flow testing services to the oil companies are known as "flow testers." DC considers flow testers as independent contractors and has each sign a "Master Work Agreement" that contains a number of provisions referring to the flow testers as

Timothy C. Kingston of Graves, Miller & Kingston, P.C., Cheyenne, Wyoming, Representing Appellant.

Gay Woodhouse, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; Gerald L. Laska, Senior Assistant Attorney General; William L. Weaver, Special Assistant Attorney General, Representing Appellee. Argument by Mr. Weaver.

* Chief Justice at time of oral argument

independent contractors and not DC employees and establishing a contractor relationship. DC also requires that the flow testers sign a "Notice to Independent Contractors," which provides:

DC Productions is in the business of renting flow testing equipment to oil companies, and upon request by oil companies may send personnel to monitor it. These personnel are independent contractors known as flow testers/pumpers. DC Productions does not have supervisory control over the independent contractors; they report directly to the oil company or companies in which they are testing for. As a flow tester/pumper, among other things, you will be expected to provide your own transportation, telephone, tools, liability insurance naming DC Production as an additional insured, licenses, and any other expenses occurred [sic] in the production of this income. You will also be expected to pay all of your own taxes including self-employment taxes and file all returns required.

[¶ 4] In 1999, DC provided sixteen flow testers to its oil field clients. Upon request by an oil company, DC contacted flow testers and contracted with them based upon availability and negotiated prices for each assignment. If DC and a contacted flow tester could not agree on a price, then both were free to decline offers. A flow tester who appeared on site received directions from the oil company regarding the specific site's requirements and provided his own replacements, transportation and insurance. DC had no further control over the flow testers activities. After completing a job, the flow tester submitted an invoice to DC for a previously agreed amount. DC billed that amount to the particular oil company along with a surcharge. At the end of the year, DC provided each of the flow testers with a Form 1099 for the amount of payments received.

[¶ 5] On March 20, 2000, the Wyoming Department of Employment issued a notice of audit to DC. On May 17, 2000, the Department issued a joint audit and procedure report that found that some sixteen "flow testers" who provided services to customers of DC were employees for the purposes of assessing unemployment insurance premiums against DC, and DC objected. A contested case hearing was held, and the hearing examiner issued a decision that upheld the joint audit and procedure report. That decision stated:

1. DC argues its flow testers are not employees because its clients, and not DC, exercise control and direction of the details of the flow tester's performance of services. The Examiner rejects DC's argument. Under the Wyoming Employment Security Law, if the worker is directed or controlled in the details of performance of services by anyone other than himself, he is not free from direction and control. In this matter, not only do the clients actually direct and control the flow testers, but the Master Work Agreement explicitly requires flow testers to submit to the control and direction of DC's clients.

2. DC argues that its flow testers are not employees because they represent themselves to the public as independent contractors. To support this argument, DC points to the fact that it reports earnings of the flow testers to the Internal Revenue Service by way of 1099 forms and to the fact that it receives invoices from the flow testers for payment for the services they provide. The Examiner rejects the argument of DC. As in the *Hat Six, Inc.,* decision, the public has no access to the IRS filings of DC or of the flow testers. In addition, the invoices submitted by the flow testers to DC are internal payment documents. The documents relied upon DC to support its argument, therefore, do not "protect the potential customer (DC's clients) by providing notice of the status of the (flow tester) ..." DC produced no evidence of any representation by any flow tester to a third party that he, the flow tester, was self-employed or an independent contractor.

3. DC argues that the Hearing Examiner must follow the Internal Revenue Service's definition of independent contractor instead of the definition enacted as part of the Wyoming Employment Security Law. The Examiner rejects DC's argument. In *Laramie Cabs,* the Wyoming Supreme

Court adopted the holding of the Arizona Court of Appeals that to rely on the definition of the Internal Revenue Service was an error by the trial court. The Wyoming Supreme Court expressly stated that the *only* definition the Examiner can apply is that which appears in the Wyoming Employment Security Law.

The hearing examiner concluded that the flow testers were employees to whom wages had been paid and were not independent contractors. DC appealed that decision to the Unemployment Insurance Commission, which revised one factual finding and affirmed the decision. DC's petition for review to the district court was certified to this Court pursuant to W.R.A.P. 12.09.

## DISCUSSION

### Standard of Review

[¶ 6] The Wyoming Administrative Procedure Act governs this Court's review of decisions by the Commission. *Hat Six Homes, Inc. v. State, Dept. of Employment, Unemployment Ins. Comm'n,* 6 P.3d 1287, 1290 (Wyo.2000).

We recently held that the substantial evidence test is the appropriate standard of review in appeals from Wyoming Administrative Procedures Act contested case proceedings when factual findings are involved and both parties submit evidence. *Newman v. Wyoming Workers' Safety and Compensation Division,* 2002 WY 91, ¶ 22 [49 P.3d 163] (Wyo.2002). We further held, that when only the party with the burden of proof submits evidence in the contested case proceeding and that party does not ultimately prevail, the arbitrary or capricious standard governs the judicial review of that agency decision. *Id.* Even if the factual findings are found to be supported by substantial evidence, the ultimate agency decision may be found to be arbitrary or capricious for other reasons. *Id.* at ¶ 23. We do not examine the record only to determine if there is substantial evidence to support the board's decision, but we must also examine the conflicting evidence to determine if the hearing examiner could have reasonably made its finding and order upon all of the evidence

before it. *Id.* at ¶ 24, ¶ 25. Because both parties presented cases-in-chief, we apply the substantial evidence standard. *Kuntz–Dexter v. State ex rel. Wyo. Workers' Safety and Comp. Div.,* 2002 WY 101, ¶ 10, 49 P.3d 190, ¶ 10 (Wyo.2002).

### Applicable Statutes

[¶ 7] DC does not dispute the hearing examiner's findings of fact, but contends that the legal conclusions based on the factual findings are not in accordance with law. An agency's conclusion of law is entitled to no deference from this Court. We will affirm an agency's legal conclusion only if it is in accordance with the law. *Haynes v. State ex rel. Wyoming Workers' Compensation Div.,* 962 P.2d 876, 878 (Wyo.1998).

[¶ 8] DC first objects to the hearing examiner's conclusion that because the oil companies could control the flow testers' on-site work, the statutory requirement of independence was not met. DC contends that the oil companies' control is that of a third party paying for the services and the statute does not apply to third party control. DC next objects to the conclusion that the flow testers did not hold themselves out to the public as independent contractors, contending that its client oil companies were aware that the flow testers were independent contractors. The applicable statute is Wyo. Stat. Ann. § 27–3–104 (LexisNexis 2001), entitled " 'Employment' defined; generally; exceptions" and reads as follows:

(a) As used in this act, "employment" means service:

(i) Performed by an employee defined under 26 U.S.C. § 3306(i) including service in interstate commerce, except 26 U.S.C. § 3121(d)(2) does not apply;

(ii) Subject to any federal tax against which credit may be taken for contribution payments into any state unemployment fund;

(iii) Required to be employment under this act as a condition for full tax credit against the tax imposed by 26 U.S.C. § 3301 through 3311; and

(iv) Otherwise specified under W.S. 27–3–104 through 27–3–108.

(b) An individual who performs service for wages is an employee for purposes of this act unless it is shown that the individual:

(i) Is free from control or direction over the details of the performance of services by contract and by fact;

(ii) Repealed by Laws 1991, ch. 153, § 1.

(iii), (iv) Repealed by Laws 1995, ch. 121, § 3.

(v) Represents his services to the public as a self-employed individual or an independent contractor; and

(vi) May substitute another individual to perform his services.

■ [¶ 9] It is uncontested that in 1999 DC paid a total of $217,431.29 to flow testers for their services which the Commission contends were wages paid to employees. We have said that the statutory definition of employment determines whether a worker may be eligible for unemployment benefits under the Act. *Hat Six Homes*, 6 P.3d at 1292; *Scott v. Fagan*, 684 P.2d 805, 810 (Wyo.1984). A worker is covered by the Act unless the hiring party establishes that the worker's services satisfy all three specified conditions of non-employment. *Hat Six Homes*, 6 P.3d at 1292; *Unemployment Comp., Comm'n of Wyoming v. Mathews*, 56 Wyo. 479, 497–98, 111 P.2d 111, 118 (1941); *Employment Sec. Comm'n of Wyoming v. Laramie Cabs, Inc.*, 700 P.2d 399, 404 (Wyo. 1985). DC has the burden of proving that the circumstances of employment were such that the elements of § 27–3–104(b) were satisfied. *Hat Six Homes, supra*, at 1292.

[¶ 10] DC contends that it met the requirements of § 104(b)(i), not controlling or directing the details of the flow tester's performance of services by contract and by fact, by providing the Master Work Agreement and not subjecting the flow testers to supervision. It argues that the statutorily required independence of the flow testers was not impaired by any specific on-site requirements relayed to the flow testers by the oil companies because the statute addresses this requirement to the parties of the contract and not to third persons. The Master Work Agreement stated in relevant part:

7. Sub Contractor [sic] looks to Oil Co. for control and direction while on location. Oil Company has the right to request or refuse contractor.... If at any time the Oil Company shall become dissatisfied with the performance of contractor as to any particular project work, the Oil Company shall have the right to terminate contractor's work by notice to DC who will relay that to the contractor and DC may either complete the project work itself or contract its completion to a third party.

[¶ 11] Under this provision, the Master Work Agreement acts to deprive the flow testers of control or direction over the details of the performance of services by contract and by fact by specifically stating that the flow testers agree to DC's requirement that they shall be subject to the control of an oil company. Based on this language the Commission concluded that the contract deprived the flow testers of control over the details of their work. We agree with DC that this single sentence of one provision is not determinative that the flow testers were deprived of control over the details of their work. All of the circumstances of employment must be examined. *See Hat Six Homes*, 6 P.3d at 1292. The evidence of many factors must be considered to decide whether DC controlled or directed the flow testers. *See Carpetland U.S.A., Inc. v. Illinois Dept. of Employment Sec.*, 2002 WL 1342230 (Ill., June 20, 2002)(discussing twenty-five factors to determine whether an independent contractor is "free from control or direction over the performance"). The hearing examiner's failure to consider all of the circumstances of this particular employment situation leaves us unable to agree with its legal conclusion on this statutory requirement.

[¶ 12] We, however, do affirm the legal conclusion that DC failed to satisfy the second statutory requirement, proof that the flow testers represented their services to the public as self-employed individuals or as independent contractors. DC contends that its client oil companies that received services from its approved list of flow testers are the "public" intended under the statute. It further contends that these client oil companies knew that the flow testers were independent

contractors available to perform services directly for them. However, assuming without deciding that "public" can be so narrowly construed, we find that there is a lack of sufficient evidence in the record which would demonstrate any instance in which a flow tester represented himself as an independent contractor to DC's client oil companies. DC contends that its office manager testified that the flow testers' invoices were submitted to the oil companies and those oil companies were thus aware that the flow testers were independent contractors, but the record does not reflect either that the invoices themselves were submitted to the oil companies, or that the oil companies were aware that they could independently contract with any of the flow testers. The testimony reflected only that the office manager would bill the oil companies based upon the invoice information.

[¶ 13] The decision that DC did not overcome the presumption of employment set forth in the statute, by failing to prove that requirements of § 27–3–104(b) were met is not arbitrary or capricious, and not an abuse of discretion. We hold that DC did not sustain its required burden of proving that the flow testers were independent contractors and not its employees.