2003 WY 150

**In the Matter of the Retirement Benefits of Ann TOLLEFSON, Appellant (Petitioner),**

v.

**WYOMING STATE RETIREMENT BOARD, Appellee (Respondent).**

No. 02–62.

Supreme Court of Wyoming.

Nov. 20, 2003.

Representing Appellant: Ann M. Rochelle of Shively, Taheri & Rochelle, P.C., Casper, Wyoming.

Representing Appellee: Hoke MacMillan, Wyoming Attorney General; Michael L. Hubbard, Deputy Attorney General. Argument by Mr. Hubbard.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶ 1] In 1998, Natrona County School District Number One (the School District) decided to implement a performance based salary system for certain employees. These employees would receive a base salary and then potentially be eligible for additional incentive pay if they achieved certain performance goals. Ann Tollefson received several incentive payments under this program. The Wyoming Retirement System determined that these incentive payments were not salary, but rather constituted "bonus" payments and thus excluded them from the calculation of Tollefson's retirement benefits upon her retirement. Retirement benefits are calculated as a percentage of an employee's highest average salary for a certain number of years. The higher the average salary, the higher the retirement benefits. Thus, the decision of the Wyoming Retirement System to exclude the incentive payments lowered Tollefson's retirement benefit.

[¶ 2] Tollefson appealed to the Wyoming Retirement Board (the Board), which upheld the decision of the Wyoming Retirement System. Tollefson then appealed to district court, which certified the appeal to us pursuant to W.R.A.P. 12.09.[1] We reverse the decision of the Board and remand with instructions to include the incentive payments in the calculation of Tollefson's retirement benefits.

## ISSUES

[¶ 3] The parties agree the two issues before this Court are:

1. Did the Wyoming Retirement Board properly conclude that the *Performance Salary Awards* paid to Petitioner by Natrona County School District No. One do not constitute "salary" under Wyo. Stat. § 9-3-402(a)(xvi)?

2. Did the Wyoming Retirement Board properly conclude that the *Performance Salary Awards* paid to Petitioner by Natrona County School District No. One constitute "bonuses" as excluded by the Board's rules and regulations?

## FACTS

[¶ 4] This appeal is presented upon stipulated facts.[2] The pertinent facts as stipulated are as follows:

1. The Petitioner, Ann Tollefson, is a member of the Wyoming Retirement Sys-

---

1. There seems to be some confusion as to whether the case was certified, or if only the questions were certified to this court. A review of the order of the district court makes clear that the district court was certifying the entire case pursuant to W.R.A.P. 12.09.

2. We note that Tollefson, on appeal, has included an affidavit explaining the correlation between the work plans, the requests for performance salary and the awarding of performance salary. The Board has objected to the introduction of what it considers to be new evidence at the appellate stage. There is record evidence that the affidavit was submitted to the Board. However, the affidavit is not included in the administrative record, and the findings of fact in the final order suggest that the Board did not consider the affidavit in reaching its determination. Therefore, this Court has not relied upon any information included in the affidavit in its review of this appeal.

tem and has been a member of the Wyoming Retirement System since August 26, 1963.

2. Ann Tollefson retired on July 1, 2000, from Natrona County School District No. One with 394 total months of service. The total months of service is not in dispute in this matter. Ms. Tollefson has been a teacher and an administrator during her career with the Wyoming public schools.

3. During the last three years of her career, 1997 through 2000, Ms. Tollefson was the Executive Director of School–Community Relations and Resource Development with Natrona County School District No. One. This is a "cabinet level" position.

4. In 1998, the Natrona County School District No. One Board of Trustees started a new compensation system called "performance pay" for cabinet level employees. This new compensation system was the first such system for any employees in Natrona County School District No. One. Similar systems have been established by Natrona County School District No. One for administrators other than cabinet level positions starting school year 1998–1999; teachers starting the school year 1999–2000; and classified employees to begin with school year 1999–2000. . . .

5. On May 30, 2000, Ann Tollefson filed an Application for Retirement with the Wyoming Retirement System. The Application selected Option 1 retirement, with an effective retirement date of July 1, 2000.

* * * *

8. . . . B. In the calculation of Ann Tollefson's retirement benefit the Wyoming Retirement System did not include amounts that were refunded due to "unacceptable bonus" or "performance pay." . . .

* * * *

10. By letter dated February 2, 2000, the Wyoming Retirement System notified the Natrona County Schools of the return of the contributions paid on bonus pay for Ann Tollefson. . . .

11. By letter dated July 25, 2000, the Wyoming Retirement System notified the Natrona County Schools of the return of

the contributions paid on "performance pay" for Ann Tollefson, as well as other employees. . . .

* * * *

25. It is the position of the Wyoming Retirement System that the Performance Pay received by Ann Tollefson in this matter is a "bonus" and under the rule does not meet the definition of "cash remuneration."

26. It is Ann Tollefson's position that "performance pay" received by Ann Tollefson is not a "bonus" under the applicable rule and meets the definition of "cash remuneration" in the statutes and the rules.

27. The performance salary compensation system initiated by the Natrona County School District No. One Board of Trustees is an ongoing, permanent system established to compensate all employees.

28. Not all employees who are eligible for "performance salary awards" receive them. . . . The Performance Salary Awards granted by Natrona County School District No. One vary with the performance of the individual employee as evaluated by the assigned evaluators.

29. Performance Salary Awards are an incentive to encourage employee performance in Natrona County School District No. One.

[¶ 5] Attached to the Stipulation of Facts and incorporated therein are several documents. These documents help explain the compensation scheme implemented by the School District. The performance salary compensation system, as explained by the School District and reflected in employee contracts, entails the establishment of a Performance Salary Range (PSR) for each employee. The PSR essentially is a pay band. Employees are assigned a Basic Salary (BS) from within the PSR. The BS is the fixed annual salary and is the least annual compensation an employee can expect to receive during the year. In addition to the BS, the pay system provides for Performance Salary (PS). The PS is the difference between the BS and the top of the PSR. The BS and the PS together represent the maximum amount that an employee can earn in an annual period.

[¶ 6] As stated in Tollefson's employment contracts, the employee "may earn" a PS award not to exceed the difference between the employee's BS and the maximum of her PSR. Employees are evaluated four times a year to provide feedback on their performances and the Superintendent and the Board Compensation Sub-committee determine the PS award as a part of the second and fourth evaluation. As stated in the facts, the PS awards granted by the School District vary with the performance of the individual employee as evaluated by the assigned evaluators. Not all employees receive PS awards after evaluation. The School District, however, established a salary budget equal to the top of each employee's PSR.

[¶ 7] In its initial proposal, dated November 23, 1998, the School District explained the rationale for the performance pay system as follows:

> In years past, salaries for the Superintendent and Cabinet-level employees were based on an annually determined percentage increase added to the existing salary of each employee. It is the desire of the Board Chair and the Compensation Sub-Committee to dramatically change this previous compensation norm to one which emphasizes market standards, responsibility, and performance. It is believed that the Pilot Performance–Based Compensation Plan ... provides a rationale and structure for compensation which addresses this premise. The two major goals of the proposed program are as follows:
>
> 1) to reward superior performance which produces improved opportunities and resources for students; and
>
> 2) to provide an incentive for executive administrators to · achieve the goals and objectives of the District as established by the Board of Trustees.
>
> By awarding compensation using a performance-based system, executive administrators will have a greater incentive to perform their jobs, both individually and collaboratively, at the highest level possible. . . .
>
> In the Natrona County School District, where the focus is on innovation, choice, opportunity, and improving achievement,

> this departure from traditional security-based pay systems which determine salaries based solely on longevity, is an appropriate method to address compensation. The proposed program requires a deep level of trust and relationship between the Board and the executive staff. It also promotes a continuous dialogue about the [sic] providing the best educational program possible for District students and rewarding those who commit to high expectations and high performance.

Attached to the Stipulation of Facts are annual "Work Plans" and semi-annual "Reports to Request Performance Salary." The Reports specifically reference the Work Plans and indicate the status of each task identified in the respective work plan.

[¶ 8] Tollefson received four PS installments prior to her retirement. Tollefson paid contributions into the Wyoming Retirement System for both her BS and her PS. The Wyoming Retirement System returned her contributions for her PS declaring that the PS was bonus pay and therefore unacceptable retirement salary. When Tollefson retired, the Wyoming Retirement System refused to calculate the PS into the final average salary from which it determined the amount of retirement due Tollefson, again claiming that the PS constituted bonus pay which is excluded from salary calculations for the purpose of determining retirement benefits. Tollefson requested a hearing before the Board, which upheld the decision of the Wyoming Retirement System. Tollefson appealed that decision to the district court, which certified the appeal to this Court.

### STANDARD OF REVIEW

[¶ 9] On review of petitions for judicial review certified to this Court pursuant to W.R.A.P. 12.09, we invoke the same standard of review applicable to the district courts. We review administrative decisions in accordance with Wyo. Stat. Ann. § 16–3–114 (LexisNexis 2003):

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statuto-

ry provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Because this case was submitted upon stipulated facts, we are only concerned with the Retirement Board's conclusions of law. We review an agency's conclusions of law *de novo*. We affirm an agency's conclusions if the agency properly applied the correct rule of law to its findings of fact. *Texaco, Inc. v. State Bd. of Equalization*, 845 P.2d 398, 399 (Wyo.1993). If, however, the agency applied the incorrect rule of law to its findings or if it improperly applied the correct rule of law to its findings, we correct the agency's errors. *Id.; see Elk Horn Ranch, Inc. v. Board of County Comm'rs, Crook County*, 2002 WY 167, ¶¶ 7–8, 57 P.3d 1218, 1222 (Wyo.2002); *DC Production Service v. Wyo. Dep't of Employment*, 2002 WY 142, ¶¶ 6–7, 54 P.3d 768, 771 (Wyo.2002) (Appellant "contends that the legal conclusions based on the factual findings are not in accordance with law. An agency's conclusion of law is entitled to no deference from this Court. We will affirm an agency's legal conclusion only if it is in accordance with the law.") "When the determination before us is a mixed question of fact

and law, we defer to an agency's findings of basic fact but correct misapplication of the law to those facts. *Aanenson v. State ex rel. Wyo. Worker's Compensation Div.*, 842 P.2d 1077, 1080 (Wyo.1992) (quoting *Union Pacific R.R. Co. v. State Bd. of Equalization*, 802 P.2d 856, 860–61 (Wyo.1990))." *Antelope Valley Imp. v. State Bd. of Equalization*, 992 P.2d 563, 566 (Wyo.1999).

[¶ 10] Likewise, to the extent this appeal involves mixed questions of law and fact:

When an agency's determinations contain elements of law and fact, we will not treat them as findings of fact. We extend deference only to agency findings of "basic fact." When reviewing a finding of "ultimate fact," we divide the factual and legal aspects of the finding to determine whether the correct rule of law has been properly applied to the facts. If the correct rule of law has not been properly applied, we do not defer to the agency's finding but correct the agency's error in either stating or applying the law.

*Union Pacific R.R. Co.*, 802 P.2d at 861.

## DISCUSSION

[¶ 11] Tollefson objects to the reduction in her retirement benefit caused by the exclusion of her PS awards from her salary by the Board. The legal question to be resolved is whether the PS awards received by Tollefson constitute "salary" for purposes of computing Tollefson's retirement benefit.

[¶ 12] The Wyoming Retirement Act defines "salary" in pertinent part as "cash remuneration paid to a member in a calendar year." Wyo. Stat. Ann. § 9–3–402(a)(xvi) (LexisNexis 2003). This Court defined "remuneration" in *Mowry v. State ex rel. Wyoming Retirement Bd.*, 866 P.2d 729 (Wyo. 1993):

Black's Law Dictionary defines remuneration as "[r]eward; recompense; salary; compensation." Black's Law Dictionary at 1165 (5th ed.1979). Each of the terms used to define "remuneration" are also defined in Black's as referring to payments made in exchange for something equivalent, such as services rendered. *Id.*, at 1188, 1144, 1200, 256. Websters' Third

New International Dictionary (1966) defines "remunerate" as: "1: to pay an equivalent for (as a service, loss or expense) 2: to pay an equivalent to (a person) for service, loss or expense," and defines "remuneration" as "remunerating." Thus, the plain and ordinary meaning of remuneration clearly contemplates payments made in return for something equivalent.

*Id.* at 731. In *Mowry*, this Court held that severance pay did not fall within the definition of salary because "definitions suggest that 'severance pay' is primarily gratuitous and, although it may be intended to partially alleviate the loss of employment, it is not an attempt to equally compensate the employee for services rendered, losses suffered, or expenses incurred." *Id.*

[¶ 13] The Board has promulgated a rule defining "cash remuneration":

"Cash remuneration," as used in W.S. 9-3-402(a)(xvi) for the purposes of contributions to the system and the determination of an employee's "highest average salary," means the compensation paid for services rendered to a participating employer, and includes: contributions required by W.S. 9-3-412; any salary reduction or salary deferral amounts under federal Internal Revenue Code Sections 125, 401(k), 403(b) or 457; any pay for administrative, sabbatical, annual, sick, vacation, or personal leave; any pay for compensatory time, provided that any such pay for compensatory time is made during the same calendar year in which the compensatory time is earned, and any retroactive compensation payments pursuant to court orders, arbitration awards, or litigation and grievance settlements. "Cash remuneration" does not include: fringe benefits such as payments for unused sick, personal or vacation leave; housing allowances; transportation expenses; early retirement incentive pay; severance pay; bonuses; medical insurance; workers' compensation benefits; disability insurance premiums or benefits; payments received by a member in lieu of previously employer-provided fringe benefits under an agreement between the member and participating employer entered into within sixty months before retirement; any other payment which may reasonably be construed to be a fringe benefit; or any payment made during any three-year period of employment which is deemed to increase highest average salary for the primary purpose of increasing a retirement benefit.

Wyo. Retirement Bd., *Rules,* ch. 8 § 1(a) (1996). According to this definition, any amount received as a "bonus" is excluded from the calculation of retirement benefits. "Bonus" is not defined by either statute or rule. The rule does not specifically address incentive pay or merit pay.

[¶ 14] The task before this Court is to construe the record evidence relating to Tollefson's employment to determine if PS awards are "payments made in return for something equivalent." Our focus is on the intent of Tollefson and the School Board with regard to the compensation scheme. Our appellate obligation is to interpret and construe contracts as a matter of law in order to shed light on the intention and understanding of the parties. *Amoco Production Company v. Stauffer Chemical,* 612 P.2d 463, 465 (Wyo.1980) ("Our basic purpose in construing or interpreting a contract is to determine the intention and understanding of the parties.") Intention is determined from the words of the contract, if the language is clear and unambiguous, and we must consider the writing as a whole, taking into account the relationships between the various parts. *Id.* After reviewing the employment contract, the stipulated facts, and the other documents attached thereto, we conclude that PS is "salary" for retirement purposes. PS is a contractually integrated component of an employee's compensation for services rendered.

[¶ 15] It is stipulated that the School District implemented a performance based compensation system and that this system is an ongoing, permanent system established to compensate all employees. As noted above, the School District explained the compensation system in its initial proposal. The entire proposal speaks to changing the salary structure. The School District wanted to depart "from traditional security-based pay systems which determine salaries based solely on lon-

gevity." The School District wanted to create a compensation system that "emphasizes market standards, responsibility, and performance." The proposal says nothing about gratuitous bonuses; it speaks only to performance pay based upon the quality and timeliness of completion of standard work tasks. The proposal leaves no doubt that the School District intended its new compensation scheme to provide the method by which employees earn their complete salary based upon their performance.

[¶ 16] The Performance Based Compensation Plan as described by the School District in its original proposal is reflected in the language of Tollefson's employment contracts. The record contains two contracts of employment. The first contract was for the 1998–1999 school year, but it was not executed until April 1999 and was backdated to July 1, 1998. The second contract is for the 1999–2000 school year. It was executed in December 1999.[3] The language pertaining to salary is virtually identical in both contracts:

> The Administrator's Performance Salary Range will be $55,000.00 (minimum) to $75,000.00 (maximum). The Administrator's Basic Salary will be $65,500.00. The Administrator may earn a Performance Salary Award not to exceed the difference between the Administrator's Basic Salary and the maximum of his/her Performance Range.
>
> For any renewals of this contract as provided for in paragraph one herein, it is anticipated that the Administrator will be evaluated four times a year to provide feedback on his/her performance as scheduled below.

| Evaluation | Evaluator(s) | Evaluation Period | Evaluation Communicated | PS Awarded |
|---|---|---|---|---|
| 1 | Superintendent | Jul-Sept | October 31 | N/A |
| 2 | Supt./Bd.Com | Oct-Dec | January 31 | January 31 |
| 3 | Superintendent | Jan-Mar | April 15 | N/A |
| 4 | Supt./Bd.Com | Apr-Jun | June 15 | June 30 |

> The Superintendent and Board Compensation Sub–Committee will determine the Administrative Performance Salary Award as a part of the second and fourth evaluations for any future contracts. The Performance Salary Award will be paid to the Administrator in accordance with the above schedule.

[¶ 17] The language of the employment contract implements the performance salary system as outlined in the School District's initial proposal. The employment contract provides for a base salary and a performance salary. As the contract notes, the employee's performance is evaluated four times a year. The performance salary is awarded as a part of the second and fourth evaluations. While perhaps it could have been written more distinctly, it is nevertheless clear from the language of the contract that the award of performance salary is directly tied to the individual performance of the employee.

[¶ 18] Further, as the system is implemented, the performance of the employee is evaluated according to objectively defined criteria. The work plans in the record are very specifically individualized to Tollefson.

As the Board found in its order, "[t]he work plan shows the tasks assigned, the task leader, the start date, the end date, success criteria/measures and state/national standard, as well as the [School] Board Goal Priority." Each work plan consists of over thirty tasks that are specifically assigned to Tollefson. Other tasks for which Tollefson has administrative oversight responsibility are also listed. These work plans are the foundation for the award of performance pay. Tollefson's requests for performance pay directly mirror the work plans. The requests are comprised of the tasks listed in the work plans, the status of each task, and any comments with regards to the task's completion. Thus, the awards of PS were expressly linked to Tollefson's services personally ren-

---

**3.** We recognize that the dates on the second contract are not consistent. In some paragraphs the effective date is given as July 1, 1999, while in other paragraphs the term of the contract is given as from July 1, 1998 to June 30, 1999. We perceive this inaccuracy to be a scrivener's error and accept that the contract covers the time period from 1999 to 2000.

dered and meet the definition of cash remuneration.

▇ [¶ 19] On appeal, the Board adamantly argues that this Court should not consider the work plans or the requests for performance pay because there is no direct evidentiary link between these documents and the award of performance pay. Indeed, in its order, despite acknowledging the work plans and requests, the Board found that "[t]here is nothing to show that the remuneration was carefully tied to actual services rendered." In reaching this conclusion, the Board viewed the evidence before it too narrowly. While no direct evidence was presented expressly linking the work plans and requests for performance salary to the award of performance salary, the documentation in this case is closely related. The relationship should not be ignored.

[¶ 20] It is appropriate to draw reasonable inferences from evidence presented. The School Board presented its initial compensation proposal on November 23, 1998. The first work plan in the record is a work plan as revised on November 29, 1998, within a few days of the proposal. The first request for performance pay is dated March 11, 1999. The first award of performance pay occurred in late March 1999. The employment contract, retroactive to July 1998, was formally executed in early April 1999. The language of the employment contract leaves no doubt as to the relationship between the employment contract and the other documentation. The employment contracts contain "Recitals" that acknowledge that the parties successfully negotiated an agreement and are only now attempting to put it in writing because "the parties have conducted themselves pursuant to the mutually negotiated terms and conditions of this Contract of Employment to each party's satisfaction." Thus, put in context, it is reasonable to infer that the work plans and the requests for performance salary relate to the award of PS as provided for in the contract of employment. The Board erred in not examining these documents when determining the nature of the PS award. The evidence considered as a whole establishes that PS is awarded in direct relation to the individual services performed by the employee.

[¶ 21] In the instant case, the Board held that PS is a bonus and not salary because:

> The Performance Pay Awards are not guaranteed as part of the employee's employment contract. The Performance Pay Awards are not **contractually** due if the goals are met. The Performance Pay Award is determined by the Superintendent and the Board of Compensation Sub-Committee. In addition, it is unlikely that the Performance Pay Award would be paid if goals are not met.

(emphasis in original). Essentially, the Board determined that PS is a gratuitous bonus because PS awards are discretionary, with no specific payment contractually guaranteed.

[¶ 22] We believe this views the issue too narrowly. Our definition of remuneration in *Mowry* only states that the payment must be directly related to the current employment efforts of the employee. A payment is not disqualified simply because it is discretionary. A payment also is not disqualified because it is offered as an incentive to an employee to achieve specific goals and objectives. Certainly any purely gratuitous payment would be excluded from "salary." Just as certainly, however, any payment that is a contractual "attempt to equally compensate the employee for services rendered" will fall within the definition of "salary."

[¶ 23] The fact that no specific payment is contractually guaranteed by itself is not decisive. The focus is on the reason behind the discretionary payment. The School District introduced the incentive factor to improve personal productivity. The discretionary factor is governed by objective goals for personal productivity. Thus, PS is strictly tied to personal productivity. It is quite consistent that some employees do not receive any PS. They simply did not perform the tasks necessary to earn the extra compensation. Instead of supporting the Board's determination that PS is a bonus, the fact that some individual employees earn different amounts of PS, including no PS, actually supports the finding that PS is salary

that has to be earned through individual effort.

## CONCLUSION

[¶ 24] From the stipulated facts, the documents, and the practices they would necessarily dictate, it is clear that, as required by *Mowry*, there is a direct relationship linking the employee's own performance and the compensation to which that employee is entitled. PS is an integral part of an employee's remuneration for services rendered. The order of the Board is reversed and this case is remanded with specific instructions that the Wyoming Retirement System must include PS in its calculation of retirement benefits for Tollefson and all similarly situated employees.