2007 WY 65

STATE of Wyoming ex rel. WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellant (Respondent),

v.

Ted G. SLAYMAKER, Appellee (Petitioner).

No. 06–198.

Supreme Court of Wyoming.

April 25, 2007.

Representing Appellant: Patrick J. Crank, Attorney General; John W. Renneisen, Deputy Attorney General; Steven Czoschke, Senior Assistant Attorney General; Kristi M. Radosevich, Assistant Attorney General.

Representing Appellee: David M. Gosar of Gosar Law Office, Jackson, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶1] Mr. Slaymaker injured his back at work, but the Worker's Compensation Division (Division) denied benefits because it concluded his injuries were pre-existing. After a contested case hearing, the Office of Administrative Hearings (the OAH) granted benefits for a torn muscle and ligament damage in Mr. Slaymaker's lower back, but denied benefits for his pre-existing bulging discs, annular tears and facet arthropathy. The district court reversed the OAH decision, concluding Mr. Slaymaker had proven his pre-existing back condition was materially aggravated by the work-related accident.

[¶2] On appeal, we conclude the record contains uncontroverted evidence that Mr. Slaymaker's pre-existing condition was materially aggravated by his work-related injury and the OAH's finding to the contrary is not supported by substantial evidence. Furthermore, the OAH's conclusion that Mr. Slaymaker did not meet his burden of proof was arbitrary and capricious.[1] Consequently, we affirm the district court's decision reversing the OAH's denial of benefits for aggravation of Mr. Slaymaker's pre-existing condition.

## ISSUES

[¶3] The Division phrases the appellate issue as:

Whether the Office of Administrative Hearing[s'] decision awarding benefits for an acute injury but denying benefits for a

---

1. The hearing examiner did not make an express finding that Mr. Slaymaker failed to satisfy his burden of proof. However, the district court fairly interpreted the OAH decision as having that effect.

preexisting injury is supported by substantial evidence?

Mr. Slaymaker generally agrees with the Division's statement of the issue, but also adds a second issue:

> Did the hearing examiner err as a matter of law when he concluded that Mr. Slaymaker's treating physician failed to adequately support his case?

## FACTS

[¶ 4] Mr. Slaymaker was employed by Union Telephone Company (Union) as a heating and air conditioning technician. On May 29, 2003, he traveled to a remote cell phone tower near Smoot, Wyoming to service equipment located at the site. The tower site could not be accessed by passenger vehicle, so Mr. Slaymaker used a four-wheel all-terrain vehicle (ATV) to travel from the road to the site. He transported the ATV using a trailer pulled behind a pickup truck.

[¶ 5] Mr. Slaymaker completed his work at the site and returned to the pickup truck. He loaded the ATV on the trailer, secured it with tie-down straps and proceeded to drive down the mountain road. As he drove, Mr. Slaymaker noticed one of the tie-down straps had broken, allowing the ATV to roll forward and lodge between the trailer and the pickup truck. Mr. Slaymaker attempted to push the ATV, which weighed approximately 400 pounds, back on the trailer when it slipped and crushed him against the truck.

[¶ 6] After Mr. Slaymaker repositioned and secured the ATV, he called another Union employee and told him what had happened. The next day, which was a Friday, Mr. Slaymaker was stiff and suffering from an aching back. He reported the injury to his supervisor and filed a worker's compensation claim. The next Monday, June 1, 2003, Mr. Slaymaker drove to Colorado to work at another site. When he returned home that evening, he was in a great deal of pain and his wife had to assist him out of the truck. Mr. Slaymaker sought medical treatment for his lower back pain, but the treatment was not successful and he has not been able to return to work since June 1, 2003.

[¶ 7] The Division denied Mr. Slaymaker's request for worker's compensation benefits because he suffered from a pre-existing condition in his lower back. Mr. Slaymaker objected to the Division's final determination, and a hearing examiner for the OAH conducted a contested case hearing. The hearing examiner awarded benefits for treatment of a torn muscle and ligament damage in Mr. Slaymaker's lumbar spine, but denied benefits for treatment of bulging discs, annular tears and facet arthropathy (a degenerative condition), finding those conditions were pre-existing and had not been materially aggravated by the May 2003 injury.

[¶ 8] Mr. Slaymaker filed a petition for review of the OAH decision. The district court reversed the OAH decision, ruling the agency's "conclusion that Mr. Slaymaker[ ] did not meet his burden of proving that his preexisting condition was aggravated by work conditions was arbitrary and capricious, an abuse of discretion and not in accordance with the law." The Division appealed to this Court.

## STANDARD OF REVIEW

[¶ 9] " 'When considering an appeal from a district court's review of agency action, we accord no special deference to the district court's conclusions. Instead, we review the case as if it had come directly to us from the administrative agency.' " *Newman v. State ex. rel Wyo. Workers' Safety and Comp. Div.*, 2002 WY 91, ¶ 7, 49 P.3d 163, 166 (Wyo.2002) quoting *French v. Amax Coal West*, 960 P.2d 1023, 1027 (Wyo.1998) (citation omitted).

[¶ 10] Upon appeal from a contested case hearing where both parties have presented evidence, we apply the substantial evidence standard to review the agency's findings of fact. *Robbins v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2003 WY 29, ¶ 18, 64 P.3d 729, 732 (Wyo.2003). Substantial evidence is more than a scintilla of evidence. It consists of relevant evidence a reasonable mind might accept in support of the agency's conclusions. *Id.*

[¶ 11] When the agency concludes the claimant did not meet his burden of

proof, we apply the arbitrary and capricious standard of review. *Boyce v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 9, ¶ 6, 105 P.3d 451, 454 (Wyo.2005).

> Under the arbitrary, capricious and abuse of discretion standard, we are charged with examining the entire record. In our examination and review of a hearing examiner's determination, we defer to the hearing examiner's findings of fact. We will examine conflicting and contradictory evidence to see if the hearing examiner reasonably could have made its findings based on all the evidence before it. The findings of fact may include determinations of witness credibility, as the hearing examiner is charged with determining the credibility of the witnesses. In our review, we will not overturn the hearing examiner's determinations regarding witness credibility unless they are clearly contrary to the overwhelming weight of the evidence.

*Brees v. Gulley Enters., Inc.*, 6 P.3d 128, 132 (Wyo.2000) (citations omitted).

[¶ 12] An administrative agency's conclusions of law are not entitled to the same deference as its factual findings. We review an agency's conclusions of law *de novo*, and " '[w]e will affirm an agency's legal conclusion only if it is in accordance with the law.' " *Diamond B Servs., Inc. v. Rohde*, 2005 WY 130, ¶ 12, 120 P.3d 1031, 1038 (Wyo. 2005), quoting *DC Prod. Serv. v. Wyo. Dep't of Employment*, 2002 WY 142, ¶ 7, 54 P.3d 768, 771 (Wyo.2002).

## DISCUSSION

[¶ 13] A worker's compensation claimant has the burden of proving all of the essential elements of his claim by a preponderance of the evidence. *Sanchez v. State ex. rel. Wyo. Workers' Safety & Comp. Div.*, 2006 WY 64, ¶ 7, 134 P.3d 1255, 1257 (Wyo. 2006). "This burden includes establishing the cause of the condition for which compensation is claimed and proving that the injury arose out of and in the course of employment." *Hanks v. City of Casper*, 2001 WY 4, ¶ 6, 16 P.3d 710, 711 (Wyo.2001). *See also, State ex rel. Wyo. Workers' Comp. Div. v. Espinoza*, 924 P.2d 979, 981 (Wyo.1996). Pursuant to Wyo. Stat. Ann. § 27–14–102(a)(xi)(F) (LexisNexis 2005) of the Wyoming Worker's Compensation Act, the definition of a compensable injury "does not include any injury or condition preexisting at the time employment begins with the employer against whom a claim is made." *Boyce*, ¶ 10, 105 P.3d at 454–55; *Lindbloom v. Teton Int'l*, 684 P.2d 1388, 1389 (Wyo. 1984). However, "[i]f an employee suffers from a preexisting condition, that employee may still recover if his employment substantially or materially aggravates that condition." *Boyce*, ¶ 10, 105 P.3d at 455. 1 Larson's Workmen's Compensation Law § 12.20, 273–276 explains this legal principle in greater detail:

> Preexisting disease or infirmity of the employee does not disqualify a claim under the "arising out of employment" requirement if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought.

*See also, Lindbloom*, 684 P.2d at 1389 (holding "in Wyoming an employer takes the employee as he finds him").

[¶ 14] In *Boyce*, we described the proof required to show a work-related aggravation of a preexisting condition.

> [O]ur case law requiring a claimant to show his or her employment "materially or substantially aggravated" the preexisting injury does not require expert medical testimony specifically using the words "substantial or material." Rather, what our cases require is that the claimant show that work activities, rather than the natural progression of the condition, factors associated with ordinary daily living or some other non-work related factor, significantly aggravated the preexisting condition. The nexus between work activities and the aggravation ordinarily will be shown through expert opinion testimony. That is, expert medical testimony ordinarily will be required to establish the link between the worsening of the medical condition and the claimant's work activities, rather than some other factor. The materiality of the nexus ordinarily will be shown through evidence of the facts and circumstances surrounding the employ-

ment. Stated simply, the claimant is required to prove by a preponderance of all of the evidence that the work activities were a significant factor in the worsening of the preexisting condition.

¶ 16, 105 P.3d at 456. *See also, Salas v. Gen. Chem.*, 2003 WY 79, ¶ 10, 71 P.3d 708, 711 (Wyo.2003).

[¶ 15] In the case at bar, there is no question that Mr. Slaymaker suffered from a pre-existing condition, including bulging discs, annular tears and facet arthropathy in his lower back.[2] The hearing examiner's findings of fact described Mr. Slaymaker's history of low back problems:

8. The evidence shows that on October 24, 2000, Dr. Noe diagnosed the Claimant as suffering from fibromyalgia and possible depression (Exhibit 00027). The diagnosis of fibromyalgia by its very definition is a chronic pain condition.

9. That on November, 30, 2001, the Claimant saw Dr. Noe again complaining of low back and mid back pain. Dr. Noe diagnosed him as suffering from low back pain, thoracic pain and probable facet syndrome (Exhibit 00024).

10. In January and March of 2002, the Claimant complained of ongoing low back pain and underwent lumbar medial branch blocks in order to better discover the cause of his pain (Exhibits 000060, 000062).

11. On March 29, 2002, the Claimant was referred by Dr. Noe to Dr. Rosenthal. Under the history section of Dr. Rosenthal's report, he indicated that the Claimant's pain is usually most pronounced in the evening and tends to be aggravated with coughing, standing and lying down. Dr. Rosenthal indicated that the Claimant continued to require the use of oral opiates for his pain control. Dr. Rosenthal discussed Claimant's treatment options with him, and it was decided that the Claimant would proceed with a medial branch radiofrequency to treat his pain. Dr. Rosenthal indicated that the average duration of pain relief is 6 to 18 months.

12. On June 3, 2002, Dr. Rosenthal ordered the Claimant to undergo a Lumbar Discogram. The Diagnostic Imaging Report indicated that the Claimant had a herniated disc at L4–5 and facet joint arthropathy more specifically [at] L1–L2. (Exhibit 000076).... IMPRESSION: (1) These discograms between L3 and S1 show that the most significant abnormality is the herniated disc at L4–5 from midline over to the left, that could irritate the exiting L5 root.

13. On June 24, 2002, the Claimant saw Dr. Berry of the Intermountain Spine Institute for evaluation. Dr. Berry [n]oted that the Claimant has had pain and discomfort for the last year and a half after working on the job lifting, twisting and bending. Dr. Berry noted that the Claimant had been through a tremendous amount of non-operative treatment. Dr. Berry also noted that the Claimant was poorly conditioned and overweight. The Claimant described his pain as in the low back and then up around L2–3 with radiating pain down both legs, worse on the left than on the right. Dr. Berry ordered a lumbar MRI (Exhibit 00087).

14. On March 17, 2003, the Claimant returned to see Dr. Noe and continued to complain of lower back pain. In his note, Dr. Noe indicated that the Claimant's back pain had not changed in location over the last month and it was very similar to the back pain he had in the past. Dr. Noe also noted that the Claimant's back pain was managed for a while by Dr. Rosenthal and seemed to improve after epidural steroid injections (Exhibit 000024).

The hearing examiner's findings pertaining to Mr. Slaymaker's medical treatment after the May 29, 2003, injury were:

15. On June 6, 2003, Dr. Gardner's note indicated that the Claimant has a history of back pain for years and that he had had multiple epidurals.

16. The Claimant again saw Dr. Gardner on June 24, 2003. An MRI scan was

---

2. The record also contains information about other problems Mr. Slaymaker had with his back, including a prior cervical spine injury and surgeries. The hearing examiner did not base his decision to deny benefits on Mr. Slaymaker's other back problems; consequently, we will not relate the details of his other problems here.

ordered which showed bulging of the discs at L4–5 and L5–S1 with a small annular tear at L4–5 as well as facet arthropathy in the low back.... Dr. Gardner reviewed the films and stated there was not a surgical lesion that he could detect on the MRI scan, certainly Ted is having a lot of pain, but I think it is more probable that it is torn muscle and possible ligament damage ... which is something that we cannot help with surgery. (Exhibit 000088) (emphasis omitted).

17. Dr. Gardner stated in a letter to the Claimant's attorney dated December 2, 2004:

(A) Dr. Gardner last saw Claimant in late October of 2002 for treatment of his low back pain;

(B) Claimant had had low back pain for at least two years and it had gotten progressively worse;

(C) On the October 24, 2002 visit, Dr. Gar[d]ner did identify that Claimant had a left L4–5 disc protrusion;

(D) The Claimant continued to show protrusion of the L4–5 disc as of the date of his letter;

(E) Claimant had a preexisting condition;

(F) Claimant's new subjective pain and injury was directly related to the injury in question of May 29, 2003;

(G) Claimant's back had previous degenerative changes;

(H) Claimant's preexisting changes had been exacerbated by the new injury of May 29, 2003;

(I) 50% of Claimant's back pain was due to preexisting conditions and 50% was due to the aggravation injury of May 29, 2003. (Exhibit U1–U2).

[¶ 16] The hearing examiner ruled the opinions expressed in Dr. Gardner's letter did not establish Mr. Slaymaker had suffered a compensable aggravation of his pre-existing lower back condition in the ATV incident. The agency order stated: "Dr. Gardner *did not* say that the Claimant had suffered a material aggravation of his pre-existing condition. Stating one suffers an aggravation is not good enough." (emphasis in original).

The hearing examiner, therefore, concluded treatment of Mr. Slaymaker's acute injury, including torn muscle and possible ligament damage, was compensable, but treatment for his pre-existing lower back condition, including bulging discs, annular tears and facet arthropathy, was not compensable.

[¶ 17] After reviewing the record in accordance with our standard of review, we conclude the hearing examiner's findings do not accurately reflect Dr. Gardner's opinions. In his December 2, 2004, letter to Mr. Slaymaker's attorney, Dr. Gardner reviewed Mr. Slaymaker's treatments both before and after the ATV accident. The doctor stated, before the accident, Mr. Slaymaker had undergone several treatments for his lower back pain and he had a disc protrusion at L4–5. With regard to Mr. Slaymaker's post-accident situation, the doctor stated:

Approximately eight months later Mr. Slaymaker did come back to the office and had indicated to us that he was involved in a Workman's Comp injury where he was bringing a 4–wheeler up from a dirt road onto a truck when one of the tire straps broke and the 4–wheeler became lodged between the truck and the trailer. He had to pull this back up by himself, and at that point in time he developed new back pain. He has continued to be treated in this office since June of 2003, his accident actually occurred on May 29, 2003. He has continued to be treated conservatively, without any surgical intervention. He has not been terribly impressed with wanting to proceed with surgery, and I have agreed with this treatment program for him. He has not undergone any aggressive surgical means, and unfortunately he has continued with aggravating back pain, as well as subjective numbness, tingling, and on occasion weakness of his lower extremities. He does continue to show a protrusion of the L4–5 disc. He could certainly be having discogenic pain, although a discogram since the new accident has not been performed to show any concordant pain. I think that clearly riding on unpaved, bumpy, dirt roads aggravates his back pain. My impression is that although he had previous pain, he was back performing his

job prior to May 29, 2003, with good success.

In regards to your questions; **I do feel that Mr. Slaymaker, based on his history, has had preexisting conditions, but I feel that these were quiescent prior to his May 29, 2003 accident. I do feel that his new subjective pain and injury is directly related to the injury in question of May 29, 2003.** According to Mr. Slaymaker's history, this would be a Worker's Compensation injury, although, because his back had previous degenerative changes with some obvious treatment being required, I would indicate that he did have pre-existing conditions and this has now been exacerbated by his new injury of May 29, 2003.

**In regards to your letter indicating the division has determined that Mr. Slaymaker did not suffer a back injury, or even a material aggravation or exacerbation of a pre-existing condition on May 29, 2003, I do not agree with this position. I do agree that he did have some pre-existing condition concerning his low back, but this has clearly been aggravated and exacerbated by the events of May 29, 2003.**

I feel at this point he is now almost a year and a half out from the injury in question. He has had good conservative care, and he continues to have pain in his low back. I would agree without any further surgical intervention that he is at maximal medical improvement in regards to his back. However, in regard to apportionment of any causation, I would have to apportion 50% to pre-existing conditions, as well as 50% to the aggravation injury of May 29, 2003.

(emphasis added).

[¶ 18] In *Boyce*, we ruled there are no "magic" words which must be uttered by the medical expert in order to justify a finding that the claimant suffered a material aggravation of a pre-existing condition.

To prove aggravation of a preexisting injury, a claimant must demonstrate by a preponderance of the evidence that the work contributed to a material degree to the aggravation of the preexisting condition. *Salas*, ¶ 10; *Jim's Water Service v.*

*Eayrs*, 590 P.2d 1346, 1349 (Wyo.1979); *Claim of Vondra*, 448 P.2d 313 (Wyo.1968). The causal connection between the work and the condition is satisfied if the medical expert testifies it is more probable than not that the work contributed in a material fashion to the aggravation of the injury. *Id.* Expert medical testimony to the effect that the work "contributed to" the injury or that the injury "most likely" or "probably" is the product of the workplace suffices. *Id.* We can find no authority for the proposition that the medical expert must state with specificity that the work conditions "materially or substantially" aggravated the preexisting condition.

¶ 11, 105 P.3d at 455.

[¶ 19] Dr. Gardner specifically stated he disagreed with the Division's conclusion that the accident did not materially aggravate Mr. Slaymaker's pre-existing condition and that his pre-existing condition had "clearly been aggravated and exacerbated by the events of May 29, 2003." Although the doctor did not put together the magic words "material" and "aggravate," the only reasonable interpretation of his opinion was that Mr. Slaymaker's pre-existing condition was materially aggravated by the ATV incident. Dr. Gardner was the only medical expert to offer an opinion on the causation of Mr. Slaymaker's current back problems and there was no evidence to discredit his opinion. The doctor's statement was clearly sufficient to satisfy our standards as expressed in *Boyce* and the precedent it relied upon.

[¶ 20] We find important similarities between this case and *Salas*. Salas had a pre-existing right knee problem and had undergone medical treatment, including surgery, prior to his employment with General Chemical. *Salas*, ¶ 3, 71 P.3d at 709. On the day he started work, a four to five hundred pound slab fell from the side of the mine and "rolled" Salas to the ground, pinning him down with his right knee bent at an angle. *Id.*, ¶ 4, 71 P.3d at 709–10. He did not immediately notice that his right knee was injured, but within a month or two after the accident, he began to experience a "new," more severe pain in his knee. *Id.*, ¶ 5, 71 P.3d at 710. He eventually sought medical

treatment and underwent a second surgery on his right knee. *Id.,* ¶¶ 6–7, 71 P.3d at 710.

[¶ 21] The Division awarded Salas benefits for "acute treatment only." *Id.,* ¶ 8, 71 P.3d at 710–11. After a contested case hearing, the hearing examiner awarded benefits for all of his medical treatment, finding the May 1999 accident materially aggravated the pre-existing degenerative condition in his right knee. *Id.* The district court reversed, finding that the "greater weight of the evidence leans toward disallowing benefits for Salas' preexisting injury." *Id.,* ¶ 9, 71 P.3d at 711. On appeal, we held the hearing examiner properly accepted Salas' expert medical testimony that the May 1999 accident exacerbated or aggravated his degenerative condition. *Id.,* ¶ 20, 71 P.3d at 715–16. We found substantial evidence to support the hearing examiner's decision awarding Salas benefits. *Id.,* ¶ 23, 71 P.3d at 716. *See also, Boyce,* ¶¶ 22–23, 105 P.3d at 458 (reversing OAH denial of benefits for aggravation of a pre-existing condition because claimant presented unopposed evidence that her work activities aggravated her preexisting condition).

[¶ 22] As in *Salas,* the only expert evidence in this case was Dr. Gardner's opinion that Mr. Slaymaker's pre-existing condition was materially aggravated by the work accident. Dr. Gardner was well aware of Mr. Slaymaker's medical history, having treated him for low back pain prior to the accident. He was, therefore, in a good position to assess whether the work-related accident materially aggravated Mr. Slaymaker's pre-existing condition. Compare *Brees,* 6 P.3d at 130 (holding physician's testimony was not sufficient to meet the claimant's burden of proving a material aggravation of a pre-existing condition because the physician was never directly asked whether the claimant's surgery resulted from the pre-existing condition or the work activities) with *State ex rel. Wyo. Worker's Comp. Div. v. Roggenbuck,* 938 P.2d 851 (Wyo.1997) (upholding award of benefits for aggravation of a pre-existing condition because evidence squarely addressed the issue of whether the work-related injury materially aggravated the claimant's pre-existing condition).

[¶ 23] Moreover, other evidence presented at the hearing established, without contradiction, that Mr. Slaymaker's physical condition deteriorated significantly following the accident. Prior to May 29, 2003, Mr. Slaymaker was suffering from lower back pain and had sought medical treatment for that condition. However, he was able to manage his pain sufficiently to continue working fifty hours per week at his physically demanding job. Following the ATV accident, he was in severe pain, could no longer work, and needed assistance getting out of his truck.

[¶ 24] Mr. Slaymaker and his wife were the only witnesses to testify at the hearing. They both testified that his physical abilities and quality of life diminished significantly after the accident. The hearing examiner did not make any findings indicating that Mr. Slaymaker and/or his wife were not credible. *See State ex rel. Wyo. Workers' Safety & Comp. Div. v. Armijo,* 2004 WY 116, ¶ 22, 99 P.3d 445, 457 (Wyo.2004) (indicating that claimant's and other witnesses' testimony about the effect of claimant's injury was persuasive). Thus, their testimony was corroborative of Dr. Gardner's opinion that the May 2003 injury materially aggravated his pre-existing lower back condition.

[¶ 25] The Division directs us to *Romero v. Davy McKee Corp.,* 854 P.2d 59 (Wyo. 1993) and *Lindbloom v. Teton Int'l,* 684 P.2d 1388 (Wyo.1984), claiming these cases justify a conclusion that Mr. Slaymaker's post-accident situation was simply a result of the natural progression of the degenerative condition in his lower back. In *Romero,* where there were conflicts in the medical testimony, we found substantial evidence to support the hearing examiner's conclusion that the claimant's work activities did not materially aggravate his pre-existing wrist problems. *Romero,* 854 P.2d at 63–64. *See also, Lindbloom,* 684 P.2d at 1390 (recognizing worsening of a pre-existing condition is not a disease "attributable to industry"). The principle discussed in *Romero* and *Lindbloom* does not apply here. Dr. Gardner's uncontested opinion as stated in his letter, rendered with full knowledge of Mr. Slaymaker's medical history, was that his pre-existing condition was materially aggravated by the accident.

[¶ 26] The record clearly establishes that Mr. Slaymaker suffered a material aggravation of his pre-existing lower back condition and the hearing examiner's conclusion to the contrary was not supported by substantial evidence. In addition, we conclude, to the extent the hearing examiner ruled that Mr. Slaymaker failed to meet his burden of proving his pre-existing condition was materially aggravated by the May 2003 accident, that ruling was arbitrary and capricious. The district court's decision reversing the hearing examiner's order denying Mr. Slaymaker benefits for aggravation of his pre-existing lower back condition is affirmed.

2007 WY 66

**Chad D. STRANDLIEN, Appellant (Defendant),**

**v.**

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 05–8.**

Supreme Court of Wyoming.

April 26, 2007.

988

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; Nathan A. Preuss, Student Intern, State Public Defender Program. Argument by Ms. Domonkos.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; James Michael Causey, Assistant Attorney General. Argument by Mr. Causey.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1]   Appellant Chad Strandlien seeks review of his conviction for aggravated vehicular homicide under Wyo. Stat. Ann. § 6–2–106(b)(i) (LexisNexis 2005).[1]   Strandlien con-

---

1.  § 6–2–106(b)(i) states:

(b) A person is guilty of aggravated homicide by vehicle and shall be punished by imprisonment in the penitentiary for not more than twenty (20) years, if:
(i) While operating or driving a vehicle in violation of W.S. 10–6–103, 31–5–233 or 41–

tends, among other things, that he was denied a speedy trial and that defense counsel rendered constitutionally deficient assistance by failing to consult with a pertinent expert witness. We find no speedy trial violation, but we do find that Strandlien was denied effective assistance of counsel. We therefore reverse Strandlien's conviction.

## ISSUES

13–206, he causes the death of another person and the violation is the proximate cause of the death[.]