2008 WY 8

**THREE SONS, LLC, Appellant (Petitioner),**

v.

**WYOMING OCCUPATIONAL HEALTH AND SAFETY COMMISSION (OSHA) Appellee (Respondent).**

No. S–07–0077.

Supreme Court of Wyoming.

Jan. 29, 2008.

Representing Appellant: John R. Hursh of Central Wyoming Law Associates, P.C., Riverton, Wyoming.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; Steven R. Czoschke, Senior Assistant Attorney General; Kristi M. Radosevich, Assistant Attorney General. Argument by Ms. Radosevich.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] Three Sons, LLC (Three Sons) challenges the Wyoming Occupational Health and Safety (OSHA) Commission's (Commission) decision to uphold a citation for failing to provide its employees with proper cave-in protection in an excavation. Three Sons claims there was insufficient evidence to support the hearing examiner's factual findings regarding the measurements of the trench, the type of soil and the position of its employee in the trench. It also asserts that it was subjected to administrative bias. We conclude there is substantial evidence in the record to support the hearing examiner's factual findings and there is no showing of administrative bias.

[¶ 2] We affirm.

### ISSUES

[¶ 3] Three Sons presents the following statement of the issues:

A. That the decision below containing an essential finding that the trench measurements at the south end were in violation was not supported by substantial evidence and the proper OSHA standard for a "short term exposure" trench was not utilized.

B. That the decision below containing an essential finding that the soil was a "Class B" classification was not supported by substantial evidence.

C. That the decision below containing an essential finding that an employee was in the south end of the trench is not supported by substantial evidence.

D. That the record reflects an "administrative bias" against your Appellant which formed the basis for this citation as a "willful" violation.

[¶ 4] OSHA agrees that the issues on appeal pertain to whether there is substantial evidence to support the hearing examiner's findings of fact. It also argues that Three Sons failed "to contest the finding regarding the soil classification (B) at the administrative hearing, and therefore, ... this Court should refuse to consider this issue on appeal" and improperly raised the administrative bias issue for the first time in its appeal to the district court.

## FACTS

[¶ 5] On April 21, 2004, Three Sons was laying a water line in a trench it dug on Storey Avenue in Cheyenne, Wyoming. OSHA conducted an inspection of the trench which included testing the soil and measuring the trench. Based upon the inspection, OSHA issued a Citation and Notification of Penalty, which stated in pertinent part:

*Citation 1 Item 1* Type of Violation: Willful

Employee cave-in protection was inadequate in that the 8–feet deep excavation was sloped too steep for Class B soil, the 5–feet vertically sided lower portion of the excavation was not supported or shielded, and an attempt at a bench was made but was inadequate since it was not 4–feet wide and was more than 4–feet high. The trench measured 8–feet deep, 6–feet 10

inches wide (toe to toe) at the bottom, and 18–feet wide at the top. For Class B soil, the excavation needed to be 22–feet 10–inches wide at the top to have the proper slope angle of one horizontal to one vertical.

. . . .

Proposed Penalty: $49500.00

The citation was classified as willful because Three Sons had previously violated OSHA regulations.

[¶ 6] Three Sons contested the citation and the matter was transferred to the Office of Administrative Hearings (OAH) for a contested case hearing. After the hearing, the hearing examiner issued a decision recommending that the Commission uphold the citation. The Commission adopted the recommended decision and upheld and confirmed the citation in all respects. Three Sons petitioned the district court for review of the Commission's order. The district court affirmed, and Three Sons filed a notice of appeal.

## STANDARD OF REVIEW

[¶ 7] " 'When considering an appeal from a district court's review of agency action, we accord no special deference to the district court's conclusions. Instead, we review the case as if it had come directly to us from the administrative agency.' " *Newman v. State ex. rel Wyo. Workers' Safety and Comp. Div.,* 2002 WY 91, ¶ 7, 49 P.3d 163, 166 (Wyo.2002), quoting *French v. Amax Coal West,* 960 P.2d 1023, 1027 (Wyo.1998) (citation omitted).

[¶ 8] When both parties presented evidence at the contested case hearing, we apply the substantial evidence standard to review the agency's findings of fact. *State ex rel. Wyo. Workers' Safety and Comp. Div. v. Slaymaker,* 2007 WY 65, ¶ 10, 156 P.3d 977, 980 (Wyo.2007); *Robbins v. State ex rel. Wyo. Workers' Safety and Comp. Div.,* 2003 WY 29, ¶ 18, 64 P.3d 729, 732 (Wyo.2003). Substantial evidence is "relevant evidence which a reasonable mind might accept in support of the agency's conclusions." *Id.*

[¶ 9] An administrative agency's conclusions of law, however, are not entitled to the same deference as its factual findings. Instead, we review an agency's conclusions of law de novo and affirm them " 'only if [they are] in accordance with the law.' " *Diamond B Servs., Inc. v. Rohde*, 2005 WY 130, ¶ 12, 120 P.3d 1031, 1038 (Wyo.2005), quoting *DC Prod. Serv. v. Wyo. Dep't of Employment*, 2002 WY 142, ¶ 7, 54 P.3d 768, 771 (Wyo. 2002).

## DISCUSSION

[¶ 10] OSHA rules require that "[e]ach employee in an excavation shall be protected from cave-ins by an adequate protective system" designed in accordance with OSHA regulations unless the excavation is entirely in stable rock or less than 5 feet deep. OSHA Rules & Regs.—Construction, Ch. 16, § 1926.652(a)(1). As explained by OSHA Compliance Officer Karen Godman at the contested case hearing, cave-in protection is required for trenches which are 5 feet or more deep because such trenches present an imminent danger to workers. The regulations set forth methods of providing appropriate cave-in protection. Sloping is one way of providing such protection and the amount of sloping required depends upon the depth of the trench and the type of soil. The citation in this case was based upon improper sloping on the south end of Three Sons' trench.

[¶ 11] Three Sons' first three arguments challenge the sufficiency of the evidence to support some of the hearing examiner's factual findings. Because it facilitates a more expeditious discussion of the issues, we will address Three Sons' second issue, regarding the propriety of the hearing examiner's findings on the soil classification, before we address its other arguments.

### 1. *Soil Classification*

[¶ 12] OSHA classified the soil at the south end of the trench as Class B. The

hearing examiner found that classification was correct. Three Sons claims that the soil was actually mixed, with Class B at the top of the trench and Class A at the bottom of the excavation.[1] Three Sons maintains that, if its soil classification was accurate, a lesser slope was required.

[¶ 13] Three Sons supervisor Paul Clark was identified as the "competent person" on the Storey Avenue project. The role of the competent person on a job site is defined by OSHA regulations and includes classifying the soils and selecting a sloping system. OSHA Rules & Regs.—Construction, Ch. 16, § 1926.650(b). The Trench/Excavation Inspection Guide completed by Mr. Clark during the OSHA inspection indicated that the soil was Class B. Dan Silva, a Three Sons employee who entered the trench, filled out an OSHA excavation questionnaire at the time of the inspection. Mr. Silva stated that the soil was Class B at the south end and Class C at the north end.

[¶ 14] During the inspection, the compliance officers used OSHA testing methods and classified the soil as Class C on the north end and Class B for the rest of the trench, including the controversial south end. The compliance officers did not enter the trench to get soil samples but, instead, used soil from the spill or spoil pile. Compliance Officer Dan Bulkley testified that he took samples from different locations in the spoil pile in order to make sure they were "representative of what the soil [was] throughout the excavation." He also testified that, if soil is layered, it is usually obvious from visual inspection and the soil in the excavation did not appear to be layered.

[¶ 15] At the hearing, Bill Langston, who was the safety officer for Three Sons, testified that, prior to OSHA's arrival on the site on April 21, 2004, he had inspected the trench. He stated that he tested the soil by taking soil samples from the trench, and concluded that the soil near the surface was Class B but that there was Class A soil near

---

1. OSHA claims that Three Sons failed to contest the classification of the soil at the administrative hearing and, consequently, we should refuse to consider this issue on appeal. As is clear from our summary of the evidence presented, Three Sons did present evidence on the soil classification issue. Moreover, the hearing examiner specifically resolved this factual issue. Consequently, we will consider it here.

the bottom. He did not, however, document his inspection.

[¶ 16] Considering this evidence, the hearing examiner found that the soil was properly classified as Class B because both Mr. Clark, acting as the competent person and supervisor of the excavation, and Compliance Officer Bulkley, who performed soil classification testing using OSHA methods, classified the soil as Class B. Because conflicting evidence was presented regarding classification of the soil, the hearing examiner was required to determine the credibility of the witnesses and weigh the evidence presented. *See, e.g., Spletzer v. State ex. rel Wyo. Workers' Safety and Comp. Div.*, 2005 WY 90, ¶ 22, 116 P.3d 1103, 1112 (Wyo.2005). She did that and chose to accept OSHA's evidence that the soil at the contested south end of the trench was Class B. As is apparent from the evidence recited above, there was substantial evidence to support the hearing examiner's finding.

## 2. *Trench Measurements*

[¶ 17] Three Sons argues that substantial evidence did not exist to support OSHA's trench measurements. The hearing examiner's recommended findings of fact, which were adopted in their entirety by the Commission, stated in pertinent part:

5. [Compliance Officer Karen] Godman ... completed a written narrative of the inspection, interviews and testing she performed. The narrative reflected Godman's determination that employee cave-in protection was inadequate on the south end of the trench, because the 8 foot deep excavation was sloped too steep for class "B" soil and the 5 foot vertically sided lower portion of the excavation was not supported or shielded.

....

9. At the time of the inspection, Compliance Officer Bulkley was the only person who took measurements of the excavation. Bulkley could visually observe that the north end of the trench had been sloped out farther than the south end. The north end was where [Three Sons employee Daniel] Silva was observed in the trench and did not require cave-in protec-

tion. However, Bulkley determined employees had been in the south end of the trench because he observed a footprint, and two shovels and copper coil that someone had placed at that end of the trench.... According to Bulkley, the shape of the trench and nature of the sloping made it very difficult to get an exact measurement of the depth and width of the south end. As a result, Bulkley dropped his tape down the south end, just above the copper coil and took the measurement of the slope and added that to the portion where he previously measured from the bend of the slope to the bottom of the excavation. Bulkley's measurements of the trench revealed the width at the bottom of the trench was 6 feet 10 inches, the width at the top of the trench was 18 feet, and from the bottom where the copper coil was observed to the top of the trench measured 8 feet. In order to comply with the sloping requirement for cave-in protection, the trench should have been 22 feet 10 inches wide at the top, versus 18 feet wide at the top.

[¶ 18] Compliance Officer Bulkley testified at the hearing that he measured the south end of the trench as 8 feet deep, 6 feet 10 inches wide at the bottom, and 18 feet wide at the top. He stated that the shape of the trench made it somewhat difficult to measure the depth of the trench, so he dropped a tape measure down in the trench and measured from the bottom to the top of the vertical portion of the wall, which was 5 feet, and then measured the slope, calculating a total depth of 8 feet. The OSHA officers measured the trench twice to verify the depth and width. Because OSHA characterized the soil as "Class B," the regulations generally required that the trench be sloped with a ratio of one vertical to one horizontal. Based upon the soil type and depth of the trench, Mr. Bulkley testified that it should have been 22 feet 10 inches wide at the top in order to be sloped properly. According to Mr. Bulkley, because of the dimensions of the trench at the south end, some type of cave in protection, such as shields or a trench box, was required.

[¶ 19] Three Sons challenges OSHA's measurements. However, although two Three Sons employees, Mr. Clark and Mr. Silva, were present during the inspection, they apparently did not measure the trench themselves. Both employees filled out OSHA documents as part of the inspection. Mr. Clark indicated the trench was 6 feet 6 inches deep at the deepest part and 22 feet wide at the narrowest point. Mr. Silva stated that the excavation was 6 to 9 feet deep (at the south end), 6 to 8 feet wide at the bottom, and 18 feet wide at the top.

[¶ 20] On appeal, Three Sons asserts that there was evidence that the trench was only six feet deep. It points to some of the photographic evidence that shows shovels standing in the trench. The angle from which the photographs were taken suggests that the trench may have been less than 8 feet deep. Three Sons also claims this evidence established that the vertical portions of the wall were less than 4 feet high, triggering an exception to the requirement that cave-in protection be provided. In addition, Three Sons directs us to Mr. Clark's testimony that a curb box, which was 6 feet high, was installed at the south end of the trench and, once the trench was backfilled, the top of the curb box lay flush to the ground.

[¶ 21] We agree that the evidence Three Sons emphasizes could be interpreted as contradicting OSHA's measurements. Faced with the conflicting evidence, it was the hearing examiner's responsibility to judge the credibility of the witnesses and weigh the evidence. *See, e.g., Spletzer*, ¶ 22, 116 P.3d at 1112. The hearing examiner did that and concluded that OSHA's measurement of the trench as 8 feet deep was more credible. That measurement, which was taken by Mr. Bulkley, included a 5 foot vertical wall. The documentary evidence, together with the testimony of the compliance officers, supported OSHA's measurements and Mr. Silva generally agreed with those measurements at the time of the inspection. Thus, there was substantial evidence to support the hearing examiner's findings on the depth and configuration of the trench.

[¶ 22] Three Sons also argues that the wrong legal standard was used to determine the required slope. It claims that the trench was a "short term" excavation and, consequently, the appropriate ratio was ½:1. The requirement for the ½: 1 ratio is found in footnote 2 of OSHA Rules & Regs.—Construction, Ch. 16, § 1926.652, Subpart P, App. B, which states in relevant part: "A short term maximum allowable slope of ½ H:1V (63 degrees) is allowed in excavations in Class A soil that are 12 fee[t] (3.67 m) or less in depth." A "short term exposure" is defined in the regulations as "a period of time less than or equal to 24 hours that an excavation is open." *Id.*

[¶ 23] Evidence presented at the hearing indicated that the trench could be classified as short term because it was opened early in the day of the inspection and backfilled soon after the inspection. Nevertheless, by its plain language, the "short term excavation" rule only applies if the soil is Class A. The hearing examiner found that the soil was Class B and, as we concluded in the preceding section of this opinion, there was substantial evidence to support that finding. Thus, Three Sons' argument that the hearing examiner should have applied the short term exposure rule is untenable.

### 3. *Employee's Position in the Trench*

[¶ 24] Three Sons also argues that OSHA's measurements were taken at the south end of the trench, but there was no evidence that an employee was ever that far down in the trench. Thus, it suggests that the citation was not appropriate because there was no showing that any employee was endangered by the improperly sloped trench.

[¶ 25] The OSHA officers observed Mr. Silva at the north end of the trench. They did not actually see anyone at the south end of the trench. There was, however, evidence of someone being near the south end of the trench because there were shovels and a footprint there. Three Sons claims that, even if it is assumed that an employee had been where the shovels and footprint were, that point was approximately 8 feet from the south end of the trench where the measurements were taken and no measurements were taken where there was evidence of em-

ployee involvement. In support of its position, Three Sons directs us to Mr. Clark's testimony that, in his estimation, Mr. Silva was 8 feet from the south end of the trench.

[¶ 26] The hearing examiner found:

14. No measurements were taken at the exact position where the evidence supports the exposed employee was actually standing or had stepped in the bottom of the trench. However, the measurement was taken above the copper coil which by all accounts was at a maximum of 2 to 3 feet from where Clark testified the exposed employee was standing. The placement of the shovels also confirms an employee was within 2 or 3 feet of where Bulkley took his measurements of the trench.

[¶ 27] We are not persuaded by Three Sons' argument. Three Sons does not direct us to any legal authority that OSHA was required to prove employee involvement in the exact location where the trench was measured as being improper. Mr. Bulkley measured the trench directly above a copper coil in the south end of the trench. Mr. Clark testified that Mr. Silva had been approximately 2 to 3 feet from the copper coil. As the hearing examiner recognized, the shovel and footprint evidence, together with the testimony of Mr. Bulkley and Mr. Clark, established that a person had been near the location where Mr. Bulkley measured the trench. That evidence was sufficient to support the hearing examiner's conclusion that an employee in the excavation was not "protected from cave-ins by an adequate protective system." OSHA Rules & Regs.—Construction, Ch. 16, § 1926.652(a)(1).

### 4. *Administrative Bias*

[¶ 28] Three Sons claims that the record reflects "administrative bias." It does not, however, cite any pertinent legal authority to support its assertion. Thus, we could refuse to consider this issue on that basis. Nevertheless, we can readily dispose of this issue on its merits and, consequently, we will address it.

[¶ 29] With regard to administrative bias, we have said that "the decision maker is presumed to act with honesty and integrity and the adverse party must demonstrate otherwise to mandate disqualification." *Dorr v. Wyo. Bd. of Cert. Public Acc'ts*, 2006 WY 144, ¶ 43, 146 P.3d 943, 960 (Wyo.2006). Three Sons presents two different arguments, claiming it was subjected to bias with regard to this citation.

[¶ 30] First, it claims that the testimony given by OSHA Compliance Supervisor, Johnnie Hall, showed that he was biased against Three Sons when he decided to issue the citation. Three Sons claims Mr. Hall's testimony indicated that he decided to issue the citation based upon prior experiences with the company. Three Sons also points to the large amount of the fine for a violation where no employee was injured as evidence of Mr. Hall's bias. Second, Three Sons asserts that the hearing examiner was biased because she had conducted a hearing on a different violation committed by Three Sons the day before the hearing in this case.

[¶ 31] The first claim does not fall into the typical argument of tribunal bias. It raises, instead, an issue of whether an employee of the agency issuing the citation was prejudiced or biased against Three Sons in deciding to issue the citation. The OSHA employee's motivation in issuing the citation was, obviously, "fair game" for Three Sons to explore during the contested case hearing. In fact, Three Sons questioned Mr. Hall about whether he had considered Three Sons' previous history with OSHA when he decided to issue the citation. He replied that he had not considered the company's history in deciding whether or not to issue a citation but he did consider it in deciding to classify the violation as willful. OSHA Rules of Practice & Procedure, Ch. 3, § 6 indicates that the history of previous violations is a legitimate factor in deciding what penalty to assess. The hearing examiner, therefore, had the information about Mr. Hall's motivation before her when she judged the credibility of the witnesses, as was her responsibility. Given the fact that we have concluded substantial evidence existed to support the hearing examiner's factual findings regarding the citation, Three Sons cannot establish any prejudice even if it were true that Mr. Hall

was biased against it when he decided to issue the citation.

[¶ 32] The second claim, the hearing examiner was biased because she had heard another case involving Three Sons the day before,[2] is a more traditional type of administrative bias claim. As we stated above, the hearing examiner is presumed to act with honesty and integrity and Three Sons had the burden of proving bias. Three Sons made no attempt at the hearing to have the hearing examiner disqualified or to inquire into her bias and did not request a continuance. The only evidence Three Sons points to in support of its claim of bias is that the hearing examiner, at one point in the hearing, asked Mr. Hall a question about whether the penalty in this case was based upon the case she had heard the day before or other violations. Mr. Hall replied that it was based upon other violations. The hearing examiner stated: "All right. Just to make sure the outcome of yesterday doesn't determine the penalty in this case." We do not see this exchange as indicating any bias on the part of the hearing examiner. To the contrary, it indicates that she wanted to be sure that the two cases did not affect one another. Thus, there is nothing which would overcome the presumption that the hearing examiner acted with honesty and integrity.

[¶ 33] Affirmed.

2. *See Three Sons, LLC v. Wyo. Occupational Health and Safety Comm'n (OSHA)*, 2007 WY 93, 160 P.3d 58 (Wyo.2007) (upholding citations that were considered at a contested case hearing the day before the citation at issue in this case).