2010 WY 76

Kevin TAYLOR, Appellant (Petitioner),

v.

STATE of Wyoming, ex. rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).

No. S–09–0170.

Supreme Court of Wyoming.

June 9, 2010.

Representing Appellant: Donna D. Domonkos, Cheyenne, Wyoming.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; James Michael Causey, Senior Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶1] Kevin Taylor appeals the district court's order affirming the Medical Commission's (the Commission) determination that he failed to meet his burden of proving his 2007 chiropractic treatment was related to a 1991 work related injury. Mr. Taylor maintains that the Commission was collaterally estopped from considering evidence of a pre-existing condition that could have been presented by the State ex rel. Wyoming Workers' Safety and Compensation Division (the Division) in a 1998 contested workers' compensation case. We affirm, concluding that the Commission was not collaterally estopped from considering such evidence and, in any event, its decision to deny benefits was supported by substantial evidence even if the disputed evidence is ignored.

## ISSUE

[¶2] Mr. Taylor presents a single issue on appeal, which he phrases as a statement:

> The findings of fact and conclusions of law are not in accordance with the law due to reliance on evidence which is barred by the doctrine of collateral estoppel.

The Division phrases the issue differently:

> When an administrative hearing in 1998 result[ed] in an award of benefits for [Mr.] Taylor's chiropractic care in 1998, does the doctrine of collateral estoppel prevent the Division from considering his current claims for additional chiropractic care?

## FACTS

[¶3] Mr. Taylor was injured in 1991 when he was emptying water buckets while working as a housekeeper for Hillhaven Nursing Home[1] in Rock Springs. He re-

---

1. Mr. Taylor's employer is variously referred to    in the record as Hillhaven, Sage View Care Cen-

ported that he had injured his left shoulder and upper back. The Division concluded that injury was compensable and allowed payment of his medical claims, including chiropractic care.

[¶ 4] The Division continued to pay for Mr. Taylor's chiropractic treatments until 1998, when it denied some claims on the grounds that the treatment was not related to his 1991 work injury. The Office of Administrative Hearings (OAH) held a contested case hearing and concluded that his chiropractic treatment was related to the 1991 injury and "until further medical evidence would warrant a change, [Mr. Taylor] is entitled to receive medical benefits for continuing chiropractic care received twice per month."

[¶ 5] Mr. Taylor continued to receive chiropractic treatment until 2007, when the Division again denied payment on the basis that the 1991 injury had been resolved and any further treatment would be due to a preexisting medical condition and/or natural aging. Mr. Taylor objected to the Division's final determination and the matter was referred to the Commission for a contested case hearing. After a hearing, the Commission hearing panel concluded that Mr. Taylor had not satisfied his burden of proving his chiropractic treatment in 2007 was related to the 1991 work injury.

[¶ 6] The Commission's decision was based upon Mr. Taylor's lengthy and complicated medical history involving numerous accidents, both before and after the 1991 work accident. Prior to his work-related accident, Mr. Taylor injured his neck and left shoulder in a motor vehicle accident in 1987 and received chiropractic treatment and surgery on his left shoulder. As part of litigation resulting from that accident, a physician authored a letter in 1988 which stated:

> [Mr. Taylor] has received ... a whiplash injury of his cervical spine with concomittant [sic] tension headaches, and a sprain/strain syndrome of his thoracic and lumbar spine. I think that this whiplash injury and the sprain/strain are not of a permanent nature and they will eventually im-

prove. However, I feel that the injury to his shoulder is of a permanent nature and the prognosis of that is unknown at this time.

[¶ 7] After the contested case hearing in 1998, Mr. Taylor was involved in a number of accidents, including a serious automobile accident in July 1999. According to the record, Mr. Taylor reported a whiplash injury and complained of back pain in 2000. A series of tests showed significant problems in his cervical spine. On August 15, 2000, neurosurgeon John H. Schneider, M.D. performed an anterior cervical diskectomy and fusion with plating at the C5–6 level. After the surgery, Mr. Taylor experienced additional neurological problems and eventually had a second fusion of the cervical spine at the C6–7 level.

[¶ 8] As part of the litigation arising from the 1999 car accident, Kyle Norris, M.D. stated in 2002 that he believed Mr. Taylor's chiropractic treatment "would continue to be related to his original Workers' Compensation injury." Mr. Taylor's neurosurgeon, Dr. Schneider, also opined:

> With regard to Mr. Taylor's neck post-motor vehicle accident, the structural anomalies threatening the nervous system have now been alleviated [by the surgeries]; however, he has had continued myofascial neck discomfort that will likely be permanent and require rehabilitation modalities, such as an occasional physical therapy or chiropractic manipulation.

The litigation was settled and his medical bills were paid from the proceeds.

[¶ 9] During the years after his work related injury, Mr. Taylor continued to receive treatments by a number of chiropractors paid by the Division. Michael Davidson, D.C. was providing treatment when the Division denied further payments in 2007. Dr. Davidson testified for Mr. Taylor at the contested case hearing, opining that his treatment was related to the original 1991 work injury. The Commission ruled that Dr. Davidson was not credible because he had a poor working knowledge of the mechanism of the 1991 injury and "an extremely poor understanding of the prior care and treatment

ter and Kindred Nursing Centers West, LLC.

that Mr. Taylor had received in the interim years between 1991 and 2006."

[¶ 10] The Commission also considered the report of an independent medical evaluation performed by Gerald R. Moress, M.D. Dr. Moress concluded that the 2007 chiropractic treatment was not related to the 1991 injury. The Commission found his opinion "to be credible and consistent with the evidence provided in this matter." The Commission's final finding of fact states:

> This Panel finds that the chiropractic care and treatment 17 years after the purported work injury, has not been proven to be directly and causally related to the original work injury of [March] 25, 1991. Numerous intervening causes have provided substantial problems to Mr. Taylor for which he has received a wide variety of care and treatment.

Accordingly, the Commission upheld the Division's denial of his claims.

[¶ 11] Mr. Taylor filed a petition for review of the agency order, and the district court affirmed. He appealed to this Court.

## STANDARD OF REVIEW

[¶ 12] On appeal from a district court's review of an administrative agency's decision, we give no deference to the district court's decision. We review the case as if it had come directly to us from the administrative agency. *Dutcher v. State ex rel. Wyoming Workers' Safety and Comp. Div.*, 2010 WY 10, ¶ 9, 223 P.3d 559, 561 (Wyo.2010); *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo.2008). Our review is governed by Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2009), which provides:

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

> (i) Compel agency action unlawfully withheld or unreasonably delayed; and

> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

> > (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

> > (B) Contrary to constitutional right, power, privilege or immunity;

> > (C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

> > (D) Without observance of procedure required by law; or

> > (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶ 13] Mr. Taylor claims the doctrine of collateral estoppel barred the Commission from considering evidence of matters which occurred prior to his 1998 contested case hearing. This issue presents a question of law, which we review *de novo*. *Boe v. State ex rel. Wyoming Workers' Safety and Comp. Div.*, 2009 WY 115, ¶ 7, 216 P.3d 494, 496 (Wyo.2009). To the extent that the issue is presented, we review the Commission's conclusion that Mr. Taylor did not meet his burden of proving that his 2007 chiropractic care was related to his 1991 work related injury by applying the substantial evidence standard. *Dutcher*, ¶ 10, 223 P.3d at 561.

## DISCUSSION

[¶ 14] Mr. Taylor asserts that the Commission committed an error of law when it considered any evidence that was, or could have been, presented at the 1998 contested case hearing. In particular, he challenges the Commission's reliance on evidence of his preexisting injury incurred in the 1987 motor vehicle accident to deny his claims for chiropractic care. Mr. Taylor maintains that collateral estoppel bars consideration of such evidence.

[¶ 15] The preclusion doctrines of collateral estoppel and res judicata apply in the administrative context, although we have

stated that the issue preclusion associated with collateral estoppel is more appropriate in the administrative setting than the claim preclusion doctrine of res judicata. *Jacobs v. State ex rel. Wyoming Workers' Safety and Comp. Div.*, 2009 WY 118, ¶ 12, 216 P.3d 1128, 1132 (Wyo.2009); *Slavens v. Bd. of County Comm'rs for Uinta County*, 854 P.2d 683, 685–86 (Wyo.1993). The factors considered in determining whether collateral estoppel applies are:

> (1) whether the issue decided in the prior adjudication was **identical** with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.

> *Wilkinson v. State ex rel. Wyo. Workers['] Safety and Comp. Div.*, 991 P.2d 1228, 1234 (Wyo.1999) (emphasis in original) (quoting *Slavens*, 854 P.2d at 686).

*Jacobs*, ¶ 12, 216 P.3d at 1132. *See also, Hemme v. State ex rel. Wyoming Workers' Comp. Div.*, 914 P.2d 824 (Wyo.1996) (ruling made in previous agency order could not be challenged in a subsequent case because the first order was not appealed); *Hall v. State ex rel. Wyoming Workers' Comp. Div.*, 2001 WY 136, ¶ 14, 37 P.3d 373, 377 (Wyo.2001) (holding collateral estoppel applies to workers' compensation claims that have been adjudicated before the OAH).

[¶ 16] The first step in the collateral estoppel analysis requires us to determine whether the issues presented in each action were identical. The record contains only a limited amount of information concerning the 1998 contested case proceeding. The notice of referral for hearing on January 16, 1998, stated the issue as: "[c]urrent treatment is not related to the original left shoulder and thoracic spine injury on March 25, 1991."

The findings of fact in the 1998 order awarding benefits, included:

– Mr. Taylor was injured while lifting a mop bucket at work in 1991.

– The original injury was diagnosed as combined muscular and ligament strain with mild nerve injury, brachioplexus.[2]

– Mr. Taylor received medical benefits for that injury for several years, including twice monthly chiropractic treatments.

– A 1993 independent medical examination by Dr. Paulos gave a different diagnosis and indicated that "the lifting injury incurred by the Claimant was probably an exacerbation of an original injury."

– Testimony by Mr. Taylor's treating chiropractor indicated that his treatment was consistent with Mr. Taylor's original "neck and upper back injury."

The OAH order concluded:

> [I]t is more likely than not that the twice monthly chiropractic treatments being received by the Claimant are reasonably medically necessary and that they are related to the original injury.

> It may be that the [Division's] final determination could be upheld by this Office upon receipt of further medical evidence. In any event the Office concludes that until further medical evidence would warrant a change, the Claimant is entitled to receive medical benefits for continuing chiropractic care received twice per month.

[¶ 17] It is not clear whether the OAH considered the effect of Mr. Taylor's pre-existing shoulder and neck injury incurred in the 1987 accident on his 1991 work related injury at the hearing. There is, of course, a general rule that "[c]laim preclusion principles of res judicata bar the relitigation of issues that were or could have been raised in the first action." *Cermak v. Great West Cas. Co.*, 2 P.3d 1047, 1054 (Wyo.2000). However, our statutes and case law indicate that application of the general principle is limited in the workers' compensation context.

---

**2.** Injuries to the brachio plexus affect the nerves supplying the shoulder, upper arm, forearm and hand, causing numbness, tingling, pain, weak- ness, limited movement, or even paralysis of the upper limb. *Stedman's Medical Dictionary* 1400–01 (27th ed. 2002).

[¶ 18] Wyo. Stat. Ann. § 27–14–606 (LexisNexis 2009) provides:

> Each determination or award within the meaning of this act is an administrative determination of the rights of the employer, the employee and the disposition of money within the worker's compensation account as to all matters involved. No determination shall be final without notice and opportunity for hearing as required by this act.

Thus, the Wyoming legislature has made it very clear that workers' compensation claims can, and should, be separately decided.

[¶ 19] *Jacobs* demonstrates the precision with which the issues are scrutinized for collateral estoppel effect in the workers' compensation context. In that case, although there were earlier contested case proceedings which discussed the claimant's abdominal pain, this Court held that collateral estoppel did not bar consideration of the compensability of treatment for that pain. We stated that the issue had not been fully litigated in the earlier proceedings nor had a final decision been made on that issue. This Court did not hold that, because the Division could have raised the issue in an earlier proceeding, it was prohibited from later contesting that aspect of the claimant's care. *Jacobs*, ¶ 13–15, 216 P.3d at 1132–33.

[¶ 20] The issue determined in 1998 was whether Mr. Taylor's chiropractic treatment, at that time, was related to the 1991 work injury. The Division is certainly prohibited from re-litigating that issue. The Commission did not re-analyze the propriety of the 1998 contested case ruling in its decision in this case; it determined whether Mr. Taylor's treatment in 2007 was related to the 1991 work injury. That issue was not identical to the issue considered at the 1998 hearing. We, therefore, conclude that collateral estoppel did not bar the Commission from considering any of the evidence presented at the hearing.

[¶ 21] It is also worth noting that the Commission did not rely solely, or even primarily, upon evidence concerning the injuries Mr. Taylor suffered in the 1987 motor vehicle accident. A good summary of the Commission's rationale is found near the end of its order:

> The Wyoming Workers' Safety and Compensation Division paid for many years of chiropractic care and treatment for Mr. Taylor's work injury of March 25, 1991, and the OAH found that the original injury continued to be compensable for purposes of continued chiropractic treatment in 1998. However, a review of the current care and treatment, in light of numerous intervening motor vehicle accidents, and two non-work related cervical fusions, does not establish that current care and treatment has been proven to be related to the original work injury. Mr. Taylor has not provided credible evidence to establish that connection. Current chiropractic care and treatment has not been proven to be related to the work injury 17 years previous, and is therefore non-compensable.

[¶ 22] Even if all of the evidence of events occurring prior to the 1998 hearing is disregarded, there was substantial evidence to justify the denial. As the above-quoted conclusion indicates, the records show that the intervening accidents affected the same areas of the body as were being treated by Dr. Davidson. Although the record contains physician statements which relate chiropractic care to the original injury, such as Dr. Norris's letter of 2002, they pertain to treatment prior to 2007.

[¶ 23] Dr. Davidson was the only medical provider who provided evidence relating Mr. Taylor's 2007 chiropractic treatment to his original injury. The Commission rejected Dr. Davidson's opinion because he had an insufficient understanding of the original injury and the intervening events. Moreover, in direct contradiction of Dr. Davidson's testimony that he only treated the areas of the original injury, Mr. Taylor testified that Dr. Davidson actually treated his whole spine, both shoulders and his hips. Mr. Taylor does not contest any of the Commission's findings of fact about the intervening injuries and Dr. Davidson's credibility. Those aspects of the Commission's decision, without

reference to Mr. Taylor's preexisting condition, are sufficient to uphold its decision.

[¶ 24]   Affirmed.