# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 145

OCTOBER TERM, A.D. 2013

*November 21, 2013*

MERIT ENERGY COMPANY,

Appellant
(Petitioner),

v.

S-13-0056

DEPARTMENT OF REVENUE, STATE
OF WYOMING,

Appellee
(Respondent)

---

*Appeal from the District Court of Sweetwater County*
*The Honorable Nena James, Judge*

*Representing Appellant:*

    Randy B. Reed; Gregory C. Dyekman; and Kevin Walton of Dray, Dyekman, Reed & Healy, P.C., Cheyenne, WY. Argument by Mr. Dyekman.

*Representing Appellee:*

    Gregory A. Phillips, Wyoming Attorney General; Martin L. Hardsocg, Deputy Attorney General; Cathleen D. Parker, Senior Assistant Attorney General; and Karl D. Anderson, Senior Assistant Attorney General. Argument by Mr. Anderson.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]    This appeal concerns the 2006 valuation of natural gas from numerous gas wells in Lincoln, Sweetwater, and Uinta counties for which Merit Energy was a take-in-kind owner.  The State of Wyoming Board of Equalization (SBOE) determined that Merit Energy failed to timely appeal several final Wyoming Department of Revenue (DOR) decisions regarding the amount of taxable gas it had received, resulting in a lack of jurisdiction by the SBOE.  The SBOE dismissed Merit's tax case with prejudice, and the district court affirmed the SBOE's dismissal.  Merit appealed to this Court, and we affirm.

## ISSUES

[¶2]    Merit lists three issues on appeal:

1.  The Wyoming State Board of Equalization erred when it dismissed Merit Energy Company's appeal for lack of jurisdiction.
2.  The discrepancy letters sent by the Department of Revenue are not final administrative decisions.
3.  The notice of valuation change sent by the Department of Revenue is a final administrative decision for purposes of appeal.

The DOR rephrases the issue as follows:

> Wyoming taxpayers can appeal final administrative decisions of the Department of Revenue to the State Board of Equalization.  But to have jurisdiction, the Board requires an appeal to occur within thirty days of the Department's decision.  Merit did not appeal several "take-in-kind" mineral assessments within the thirty-day period but waited until a change in valuation notice was sent to county officials two years later.  Did the mineral assessments constitute final administrative decisions so that Merit had to appeal from them within thirty days and, therefore, did Merit's delay divest the Board of jurisdiction to hear its eventual appeal?

## FACTS

[¶3]    This dispute concerns Merit Energy's 2006 natural gas severance and ad valorem tax liability for various wells located in Sweetwater, Uinta, and Lincoln Counties.  Merit is a take-in-kind interest owner, which is generally defined as a party who elects to take a

1

portion of the mineral produced rather than receive monetary remuneration for its share of the production. *Department of Revenue Rules*, ch. 6 (Ad Valorem and Severance Taxes on Mineral Production), § 4 b.(s.) (2006).

[¶4]    On October 3, 2007, the DOR notified Merit of take-in-kind volumetric discrepancies between what Merit reported and what was reported by various operators for 2006 production. In its notice, the DOR gave Merit sixty days to initiate contact with the operators and reconcile the discrepancies, but Merit did not resolve the issue. In fact, Merit did not respond in any fashion to the initial October 3rd letter.

[¶5]    The DOR sent a second and third letter to Merit on March 17, 2008, and April 24, 2008, to notify the company of additional volumetric discrepancies for two additional mineral groups. As in the original letter, Merit was given sixty days to initiate contact with the operators and reconcile those discrepancies, and again, Merit did not respond.

[¶6]    As a result of the unresolved volumetric discrepancies first brought to Merit's attention on October 3, 2007, the DOR also issued a take-in-kind assessment of additional taxable value in the amount of $15,671,697.00. On November 24, 2008, the DOR again issued assessments to Merit for additional taxable value occurring as a result of the take-in-kind reporting discrepancies brought to Merit's attention in the March 17 and April 24, 2008, letters. The assessment stated that

> [t]hese volume allocation discrepancies will create taxable value increases for gross products purposes and also has the potential to result in taxable value increases for severance tax purposes, and is a final administrative decision by this Department.

[¶7]    As well as stating the foregoing information, each letter notified Merit that the changes in taxable value would be the basis for severance and ad valorem tax increases. Each letter also advised Merit that the letter was a final administrative decision by the DOR and that Merit had thirty days to appeal the decision to the SBOE. Again, Merit did not appeal or respond in any fashion to these letters.

[¶8]    On June 29, 2010, the DOR issued a notice of valuation change (NOVC) to Lincoln, Sweetwater, and Uinta county assessors setting forth the increase in taxable value for Merit Energy for 2006 in accordance with the March 17 and November 24, 2008, assessment letters. The NOVC notified the county assessors that Merit's time to appeal the discrepancies had lapsed. A courtesy copy of the NOVC was provided to Merit Energy, and a little over two weeks later, on July 16, 2010, Merit Energy appealed the NOVC to the SBOE, which dismissed it as untimely on December 6, 2010.

[¶9]   Following the SBOE's dismissal, Merit Energy appealed that decision to the district court.  On February 7, 2013, the district court issued a decision letter affirming the SBOE's dismissal.  The court found that the 2008 letters were final administrative decisions by the DOR and that Merit Energy's failure to appeal those letters made its subsequent appeal of the notices of valuation change untimely.

[¶10]  This appeal followed.

## STANDARD OF REVIEW

[¶11]  Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2013) governs judicial review of administrative decisions, and states in part:

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.  In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error.

This Court reviews an agency's conclusions of law *de novo,* and affirms them "only if in accordance with the law." *Three Sons, LLC v. Wyo. Occupational Health & Safety Comm'n (OSHA)*, 2008 WY 8, ¶ 9, 175 P.3d 618, 621 (Wyo. 2008) (citations omitted).

## DISCUSSION

### Severance Tax Procedure and Take-in-Kind Assessments

[¶12]  Wyoming's mineral tax system is a self-reporting system.  *Wyo. Dep't of Revenue v. Guthrie*, 2005 WY 79, ¶ 14, 115 P.3d 1086, 1092 (Wyo. 2005).  In Wyoming, mineral taxpayers are statutorily required to submit gross products tax returns ***annually*** which identify information related to their mineral production "as the department may require to assess the production[.]"  Wyo. Stat. Ann. § 39-14-207(a)(i) (LexisNexis 2013).  In addition, these taxpayers also must file monthly severance tax returns.  *Id.*  The DOR has broad authority to review these filings should it discover any issues.  *See* Wyo. Stat. Ann. § 39-14-208(b)(iv)(v)(F) (LexisNexis 2013).  Any findings are then sent to the taxpayer in the form of a dated assessment letter detailing the DOR's adjustment and advising the taxpayer that if it disagrees, it may appeal the DOR's action to the SBOE within thirty days.

3

[¶13] Generally, operators of oil and gas wells must report and pay all severance taxes, including taxes on minerals owned by other entities such as royalty interests. *BHP Petroleum Co. v. State*, 784 P.2d 621, 627 (Wyo. 1989). The only exception is the take-in-kind interest owner. *See Department of Revenue Rules*, *supra*, ch. 6, § 6 (a.)(iii.). While the operator of a well must report all mineral production, the take-in-kind interest pays taxes upon the volume of gas which it takes "in-kind" and then sells separately. *Department of Revenue Rules*, ch. 6, § 4a.(s.).

[¶14] Here, Merit qualified as a take-in-kind taxpayer. Merit was a working interest owner on the pertinent Wyoming oil and gas wells, but it did not operate the wells or produce the gas. Instead, Merit physically received its ownership share in-kind from the operator. Merit then directly marketed and sold its gas separately from the operator's production. Merit reported and paid taxes as a take-in-kind owner because the price received for its gas may have differed from the price received by an operator. Take-in-kind owners notify the DOR of their election to take their gas in-kind and report in accordance with the DOR's rules. *See Department of Revenue Rules,* ch. 6, §§ 6 (a.) and 4 b.(s.).

[¶15] These same rules explain that volumetric discrepancies may arise when two or more taxpayers report production from the same well. The DOR requires operators to report the total production volumes, while take-in-kind owners are required to only report the volumes which they individually retain and sell. *Department of Revenue Rules*, ch. 6 § 7 (a.)(i.)(D.). The DOR requires that operators and take-in-kind owners exchange production information and that they work out any volumetric discrepancies contained in their individual filings. *Id.,* § 6 (b.)(i.)(ii.). In the event of a volumetric discrepancy, the DOR notifies the take-in-kind owner of the discrepancy by a formal written notice. The take-in-kind owner has sixty days to resolve a filing discrepancy with the DOR. *See* Wyo. Stat. Ann. § 39-14-208(b)(v)(F) (LexisNexis 2013). If no corrective return is filed, the DOR assesses taxes on the underreported production using pricing and deduction information reported for that production. If the taxpayer disagrees with the assessment, it may appeal to the SBOE within thirty days.

## Do the Assessment Letters Qualify as Final Administrative Decisions?

[¶16] With the DOR's rules in mind, we turn to the facts of this case. On appeal, Merit claims it is not disputing that discrepancies exist between the amounts reported by Merit and the operator. Rather, it contends that those discrepancies are irrelevant and should not have affected its tax valuation. The question on appeal, however, is limited to whether the SBOE had jurisdiction to decide Merit's appeal. That is, were the letters sent by the DOR to Merit final administrative decisions that should have been appealed if Merit wished to contest the effect of the discrepancies on its tax valuation? Merit claims that the letters were ***not*** final administrative decisions. Conversely, the DOR insists that it plainly notified Merit that the assessments were final administrative decisions and that

Merit was required to appeal to the SBOE within thirty days. Accordingly, the SBOE properly dismissed the case for lack of jurisdiction.

[¶17] Wyo. Stat. Ann. § 39-14-209(b)(iv) and (v) (LexisNexis 2013) requires taxpayers to appeal final oil and gas valuation determinations to the SBOE within thirty days. We therefore must look at whether or not the DOR's letters of March 17, 2008 and November 24, 2008 are final administrative decisions, which this Court has defined as "ending the proceedings leaving nothing further to be accomplished." *Bd. of County Comm'rs v. Exxon Mobil Corp.*, 2002 WY 151, ¶ 35, 55 P.3d 714, 723 (Wyo. 2002).

[¶18] Additional discussion on this subject exists within our jurisprudence. In *Amoco Prod. Co. v. Wyoming State Bd. of Equalization*, 7 P.3d 900, 904 (Wyo. 2000), this Court discussed whether there occurred a "final determination which was subject to appeal," and ultimately decided that the letter at issue was a final determination because it "communicated the Department of Revenue's final and conclusive decision concerning the allocation of production … and was subject to appeal." *Id.* The *Amoco* court reasoned that

> Amoco does not, however, direct us to any statutory or regulatory authority which states that the Department of Revenue must make its final determination concerning allocation decisions by issuing a notice of valuation change or a special directive. Indeed, the relevant statutes seemed to envision that the taxpayer would be notified of the Department of Revenue's valuation decision and given an opportunity to contest the assessment before the valuation was certified to the counties. *See*, *e.g.*, Wyo. Stat. Ann. § 39-2-201(d) & (e) (Michie 1997) (repealed 1998).

*Amoco Production*, 7 P.3d at 904.

[¶19] Likewise, in *Ebzery v. City of Sheridan*, 982 P.2d 1251 (Wyo. 1999), this Court examined whether a city board of adjustment, when reviewing a request for variance, issued a final decision when it made a decision contained within its minutes six weeks before a written order was issued. This Court concluded that the minutes showed that the Board's decision unequivocally granted the variance on the record, and stated: "[T]here was nothing further to accomplish after the July 30 meeting, and, consequently, the Board's determination on July 30 was a final appealable order." *Id.* at 1254.

[¶20] Contrary to these cases, Merit believes the 2008 assessment letters were not final administrative decisions and lists three reasons why. First, Merit argues the letters state that there is merely the "potential" to result in a taxable value increase, rather than a finalized increase. Second, Merit contends that the letters did not end the proceedings,

and the DOR continued to retain the matter, evidenced by the letter sent November 24, 2008, which increased the taxable value. Third and finally, Merit argues the letters were not final agency actions because Merit could still amend its tax returns, or an audit could have occurred.

[¶21] The DOR responds in kind to Merit's arguments. First, regarding the word "potential," the DOR says when reviewed in context, "potential" could not be interpreted to alter the finality of the DOR's assessments. The DOR further argues the letters **did** end the proceedings, and finally, the DOR states that although there was a possibility of future assessments, audits, and amended returns, the finality of the DOR's 2008 assessments stands. We agree with the DOR and fully explain below.

[¶22] As to Merit's first argument regarding the 2008 letters' statements that it stated merely the "potential" to result in a taxable value increase rather than a finalized increase, we conclude that the distinction does not support Merit's argument. In *MGTC, Inc. v. Public Serv. Comm'n*, 735 P.2d 103, 106 (Wyo. 1987), this Court stated "if the agency retains the matter for further action, the order is not final." The DOR's 2008 take-in-kind assessment letters to Merit left nothing to be completed regarding establishing taxable value. The DOR explicitly identified the final assessments of the taxable value on which Merit's severance and ad valorem taxes would be based, and the letters stated specifically that they were "final administrative decision[s]."

[¶23] Secondly, Merit contends that the DOR's assessment letters were not final agency actions because the DOR continued to revise its assessments. This goes hand in hand with Merit's first point. From our review of the record, the 2008 take-in-kind assessments expressed that the reported volume discrepancies "will" create taxable value increases "for gross products purposes" because the inconsistencies are based upon an analysis and comparison of the annual gross product tax returns of the operator and Merit. *See* § 39-14-207(a)(i). The 2008 take in kind assessments clearly state:

> The Wyoming annual gross products returns for gas (form 4201) for the 2006 production year have been reviewed by this office. It has been determined that the attached take in-kind volume(s) reported by your office do not correspond with the volume(s) reported by the designated operator. See attachment for groups and variances.
>
> These volumes allocation discrepancies will create taxable value increases for gross products purposes and also has the potential to result in taxable value increases for severance tax purposes, and is a final administrative decision by the Department.

[¶24] As the DOR explains in its brief, it found that the operator's volumes on its gross products return did not match the volumes reported, and thus the assessments for additional volumes "will create taxable value increases for gross products purposes." Because Merit also reported separate monthly severance tax returns in accordance with Wyoming statutes, the DOR would not reconcile Merit's annual gross product return with its monthly severance tax returns until the take-in-kind reconciliation was finalized. Thus, the "potential to result in taxable value increases" phrasing used by the DOR is ostensibly because the DOR is erring on the side of caution, as it could not have known if Merit's monthly reporting was consistent with its annual reports because a reconciliation had not occurred.

[¶25] Merit's stated third reason that the letters do not constitute final administrative decisions is that Merit could have filed an amended return or an audit could have been performed, either of which would have required the DOR to issue a new assessment. While that may be true, Merit fails to establish how, in the absence of those things happening, the DOR's actions were not final. Merit did not file an amended return. The DOR did not perform an audit. The DOR and the SBOE both acknowledge that the assessment and collection of mineral taxes can be a long and drawn out process because of the opportunities for appeal, amendment of returns, and audits on returns. Merit, however, cites no authority that would allow the potential of those events alone to alter what is otherwise a final agency action. Additionally, in at least one case, this Court has discussed the fact that the mineral tax process is one that allows for appeals along the way by either the taxpayer or the DOR. *Bd. of County Comm'rs*, ¶ 36, 55 P.3d at 724, n.1 ("… by statute either the DOR or taxpayer may seek review at earlier stages in the taxation process.").

[¶26] In fact, Merit heavily relies on this case in support of its argument that it could have filed its appeal within the statutory period allowed to file amended returns or audits, rather than within thirty days of the assessment decision. Merit's reliance is misguided because this case is clearly distinguishable. First, the Sublette County case arose from the county filing numerous appeals (more than a dozen) to multiple amended returns and determinations made with respect to Exxon Mobil Corporation's production during the 1990s. The issue was whether Sublette County, as a political division of the State, could challenge the DOR's substantive tax valuation decisions. Exxon Mobil argued that the county had overstepped its limited statutory role in the state tax system. This Court ruled that the county's authority to appeal is indeed limited, and as far as the county is concerned, the DOR's decisions were not final until the issuance of a NOVC. We explained that, in the context of a county's authority to appeal,

> [t]he annual value certification for ad valorem tax is not a
> final decision. Much remains to be accomplished in the tax
> process at that time. It is only after the time for an audit has

expired, or an audit is complete, and the DOR has assessed on the basis of the audit (Wyo. Stat. Ann. § 39-14-208(b)(v)(E)) that there is nothing more to be accomplished. Only then has the DOR made a final decision that a county may appeal. Appeals by a county before that point are exercises in futility.

*Bd. of County Comm'rs*, ¶¶ 34-36, 55 P.3d at 723-724. However, this Court did not suggest that a ***taxpayer*** may, or should, wait until a NOVC is issued before appealing – instead, the scope of *Bd. of County Comm'rs* only clarifies a county's participation in mineral tax disputes, not a taxpayer's.

[¶27] After careful consideration of the record and based upon our discussion herein, we conclude that the 2008 assessment letters were final administrative decisions. Merit first had notice of the volumetric discrepancies from the sixty-day notice letters sent by the DOR. The 2008 letters setting forth the DOR's assessment of additional taxable value had an appeal time of thirty days. Merit did nothing until ***all*** appeal options were expired, and we agree with the district court that the SBOE had no choice but to dismiss Merit's appeal as being untimely.

## Right to Appeal the Notice of Valuation Change

[¶28] Merit contends that regardless of what occurred with the DOR's 2008 letters, Merit is nevertheless entitled to appeal the NOVC that was sent to the counties. Merit argues that its timely appeal of the NOVC therefore allows it to address the underlying assessment issues. Merit contends that the NOVC was final agency action, and because other taxpayers have been permitted to appeal NOVCs, Merit should be allowed to do so here.

[¶29] The DOR argues, and the district court agreed, that the examples of taxpayer appeals of NOVCs that Merit cites are distinguishable because those taxpayers had ***also*** appealed the underlying assessments. We need not, however, consider each example of a taxpayer's appeal of an NOVC, because even if an NOVC were appealable, collateral estoppel would preclude Merit from challenging the underlying taxable value assessments.

> The preclusion doctrines of collateral estoppel and res judicata apply in the administrative context, although we have stated that the issue preclusion associated with collateral estoppel is more appropriate in the administrative setting than the claim preclusion doctrine of res judicata. *Jacobs v. State ex rel. Wyoming Workers' Safety and Comp. Div.*, 2009 WY 118, ¶ 12, 216 P.3d 1128, 1132 (Wyo. 2009); *Slavens v. Board of County Commissioners for Uinta County*, 854 P.2d

8

683, 685-86 (Wyo. 1993). The factors considered in determining whether collateral estoppel applies are:

> (1) Whether the issue decided on in the prior adjudication was **identical** with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.
>
> *Wilkinson v. State ex rel. Wyo. Workers Safety and Comp. Div.*, 991 P.2d 1228, 1234 (Wyo. 1999) (emphasis in original) (quoting *Slavens*, 854 P.2d at 686).
>
> *Jacobs*, P 12, 216 P.3d at 1132. *See also*, *Hemme v. State ex rel. Wyoming Workers' Comp. Div.*, 914 P.2d 824 (Wyo. 1996) *(ruling made in previous agency order could not be challenged in a subsequent case because the first order was not appealed).*

*Taylor v. State ex rel. Wyo. Workers' Safety and Compensation Div.*, 2010 WY 76, ¶ 15, 233 P.3d 583, 586-87 (Wyo. 2010) (citations omitted) (italic emphasis added).

[¶30] We find the application of collateral estoppel to these facts to be clear and straightforward: 1) the issue was identical in both instances: challenge of the underlying taxable value assessments – those assessments were finalized by the 2008 decision letters, and Merit did not appeal those final determinations; 2) the 2008 decision letters stated they were final administrative decisions; 3) Merit was a party to both proceedings; and 4) Merit could have appealed the 2008 letters and did not do so, unfortunately not taking full advantage of its opportunity to litigate this matter in the prior proceeding.

## CONCLUSION

[¶31 ] The 2008 tax assessment letters sent by the DOR to Merit Energy were final administrative decisions. Merit had thirty days in which to appeal these decisions and did not do so. We affirm the district court's decision affirming the SBOE's dismissal of Merit's appeal as untimely. Furthermore, we conclude that even if this Court permitted Merit to appeal the Notice of Valuation Change, the doctrine of collateral estoppel precludes Merit from doing so. The underlying taxable value assessments were finalized by the 2008 tax assessment letters.

[¶32]  Affirmed.